**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
BLAIR A. NICHOLAS (Bar No. 178428)
blairn@blbglaw.com
TIMOTHY A. DELANGE (Bar No. 190768)
timothyd@blbglaw.com
RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
BRETT M. MIDDLETON (Bar No. 199427)
brettm@blbglaw.com
MATTHEW P. JUBENVILLE (Bar No. 228464)
matthewj@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Counsel for Lead Plaintiff Arkansas State Highway
Employees Retirement System and Lead Counsel
for the Class*

(Additional Counsel listed on signature page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MARK ROBERTI, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br>   v.<br><br>OSI SYSTEMS, INC., DEEPAK CHOPRA, ALAN I. EDRICK, and AJAY MEHRA,<br><br>                    Defendants. | Case No.:  2:13-cv-09174-MWF-VBK<br><br>**<u>CLASS ACTION</u>**<br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING JOINT PROTOCOL FOR PRODUCTION OF DISCOVERY MATERIAL** |

Lead Plaintiff, the Arkansas State Highway Employees Retirement System ("Lead Plaintiff," or "ASHERS"), and Defendants OSI Systems, Inc. ("OSI"), Deepak Chopra ("Chopra"), Alan Edrick ("Edrick") and Ajay Mehra ("Mehra") (collectively, "Defendants" and, together with Lead Plaintiff, the "Parties") submit this agreed Proposed Joint Protocol for Production of Discovery Material for this Court's consideration ("Protocol") and respectfully request that the Court enter an Order approving the same.

## I. Definitions and Instructions

1. As used herein, the terms "Party" or "Parties" mean Lead Plaintiff or Defendants or both of them, and the term "Third Party" means any person or entity that is served with a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure. The provisions set forth herein shall govern all production of discovery materials. Productions of material designated as "Confidential" ("Confidential Discovery Material") made prior to the entry of a protective order in the above-captioned action ("Protective Order") will be considered solely on an "Attorneys' Eyes Only" basis.[1]

2. The Parties will comply with this Protocol in producing any electronically stored information ("ESI") or other documents (collectively "Discovery Material") in this Action.

3. By agreeing to this Protocol, the Parties do not admit that any Discovery Material produced under its terms is relevant or admissible in this action or in any other litigation.

4. The Parties will make reasonable efforts to ensure that all ESI they produce is decrypted.

5. The Parties will make reasonable efforts to ensure that all ESI and other material they produce is legible to the same extent as it is maintained in the ordinary

---

[1] The Parties are currently in the process of negotiating a protective order and believe that it is in the Parties' best interest to agree on a protective order as soon as practicable.

course of business.

6. The terms of this Protocol shall apply to all Discovery Material disclosed during the course of the litigation pending before the Court, including Discovery Material disclosed prior or subsequent to the entry of this Protocol.

7. Nothing in this Protocol shall be interpreted to require the disclosure of any ESI or other documents that a Party contends are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection, nor shall this Protocol require the production of ESI or other documents that are not discoverable under applicable law.

8. Moreover, nothing in this Protocol shall waive or limit any protections afforded the parties under Federal Rule of Evidence 502.

9. The Parties agree to confer as to discovery of ESI and other documents as necessary.

10. "Native File(s)" means ESI in the electronic format of the application in which such ESI is created, viewed, and/or modified in the ordinary course of business. Native Files are a subset of ESI.

11. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

12. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.

13. An image load/unitization file in a standard .opt or .log litigation support image load format shall be included that provides: (i) the document number for each image; (ii) the full path name(s) of each TIFF that represents an image; and (iii) the

document boundaries for each document. The load file also shall be in the order that appropriately corresponds with each image file. The following represents the format of a standard .opt or .log image load/unitization file: Bates, Volume, Path_to_image, Document Break, Folder Break, Box Break, Total_Pages.

## II.      Sources of ESI

14.     The Parties agree that the following sources of ESI generally may contain discoverable information and documents: email systems, shared drives, user drives, databases, document management systems, hard drives, personal computers, work laptops, iPads or other tablets, smart phones, and thumb drives and discs.

15.     Notwithstanding anything to the contrary herein, the following document types are not discoverable in the litigation except upon a showing of good cause:

    (a) Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium.

    (b) Temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system.

    (c) Deleted, slack, fragmented or other data only accessible by forensics.

    (d) On-line access data such as temporary Internet files, history, cache, cookies, and the like.

    (e) Electronic mail or pin to pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

    (f) Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

    (g) Logs of calls made from mobile devices.

    (h) Server, system, or network logs.

    (i) Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

    (j) Data remaining from systems no longer in use that is unintelligible on systems in use.

16. The Parties agree to meet and confer to discuss specific requests for the following document types: (i) instant messaging communications; and (ii) voicemail and recorded voice messages, including voicemail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats.

17. The Parties have discussed the sources of discoverable information relevant to this action and any issues concerning preservation or accessibility of such discoverable information.

### III. Production of Hard-Copy Documents

18. The Parties agree to produce hard-copy documents in single-page TIFF image format named according to Bates number accompanied by document-level optical character recognition ("OCR") text files. The Parties also agree to provide load files linking the TIFFs with their associated text file such that the documents shall be loadable in document management software such as Concordance. The database load file should contain the following fields: "BEGBATES," "ENDBATES," "PAGE COUNT," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, contain correct document breaks: for instance, a five-page fax consisting of a cover page and a four-page memo should be unitized as a five-page document)

19. The Parties will use reasonable efforts to scan hard-copy documents such that the images appear the same as the documents are kept in the ordinary course of business. Reducing image size may be necessary to fit page size or display production numbers and confidentiality designations without obscuring text.

20. A producing party may produce color hard-copy documents as black-and-white images. Where the original of a produced document is in color, and color is

material to the interpretation of the document, the receiving party may request that the document be produced in color. If the documents are produced in color they should be produced as single-page JPG images.

21. If any original hard-copy document has notes affixed thereto or attachments, the Parties will scan and produce copies of the notes or attachments, unless privileged, in the same manner as other documents.

## IV. Production of ESI

22. For the production of ESI, the Parties agree to produce ESI in single-page Group IV TIFF image format using at least 300 DPI print setting, with the exception of items listed in paragraph 23 below. Each image shall have a unique file name, which is the Bates number of the document. Original documentation orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape). TIFFs will show any and all text and images which would be visible to the reader using the native software that created the document. Additionally, the Parties agree to deliver extracted text corresponding to each imaged document as individual text files named for the Bates number of the document. The path to the text files will be referenced in the Full Text field in the .dat file or in a corresponding .lst file. Additionally, all ESI will be produced with a delimited, database load file that contains the metadata fields listed under paragraph 25. An .opt image cross reference file will also be provided for all TIFF images.

23. Exceptions:

   1. Microsoft Access files, Excel files, spreadsheet files, Microsoft PowerPoint files, .CSV files, source code, audio, video, and other similar databases shall be produced in native format with a placeholder TIFF image in accordance with the production format set forth above. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVE FILE

PATH field. The exception will be for redacted Excel files which will be produced in TIFF format as specified in paragraph 22. Images for the redacted Excel files will display the content in the same manner as if such files were printed. The extractable metadata and text shall be produced in the same manner as other documents that originated in electronic form. To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph, the Parties agree to meet and confer on the issue in good faith.

2. Image Not Readable. Where TIFF images of certain documents are not readable, or do not represent the files as maintained in the ordinary course, the Parties will produce such documents in native format or in hard copy. To the extent the receiving party obtains through discovery a file or document that the Party believes is not adequately represented in TIFF image format, the receiving party may request that file or document be produced in native format, the production of which shall not be unreasonably withheld.

3. Non-Convertible Files. Certain types of files such as video and sound files may not be amenable to conversion into TIFF format. Such files will not be converted into TIFF format but will be represented in the form of a placeholder TIFF image. These files will be produced in native format with the Source File Path provided, or in a reasonably usable form by agreement of the Parties. For example, if the native format is not playable using Windows Media Player, then the file may be produced in an alternate format (for example, recorded telephone calls may be produced in a .wav format). Examples of file types that are not conducive to conversion

into TIFF image include but are not limited to: *.pdb *.mov *.mp3 *.swf *.wav *.mpeg *.mpg *.ram *.rm *.psd *.mpe *.wma *.m4a *.m4p.

4. Previously Produced Documents. No Party shall be required to reformat documents or data that were previously produced in other litigations or in response to governmental or regulatory inquiries or investigations prior to producing such material in this action. All documents or data produced in the same format as they were produced or collected in such other matters are deemed to be in compliance with this Protocol when produced in this matter, notwithstanding other provisions in this Protocol. In the event the receiving party has a question, issue, or concern about the form of production of previously-produced documents, the Parties agree to meet and confer regarding the form of production.

24. For any document that is redacted, the producing party shall withhold any metadata that is the subject of the redaction, and provide OCR text for the produced image as redacted.

25. The Parties agree that all ESI shall be produced with the metadata in the table below and in the manner set forth in this paragraph, to the extent reasonably available for a particular document. Database information shall be provided in a ".dat" file extension, which contains the metadata fields provided below as a delimited database load file. For the Concordance .dat, the Parties should use Concordance standard delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate multiple values within a single field). The fielded data should include all the below metadata fields for a file in addition to the unitization (including the production number of the first and last page of each document), and attachments (including information sufficient to identify the parent and child relationships of all documents and

ESI that are or have attachments). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document. The Parties are not obligated to populate manually any of the following fields with the exception of the CUSTODIAN, VOLUME, and ORIGFILEPATH fields, which must be populated by the producing party.

| Field Name | Field Description |
|---|---|
| BegBates | Beginning Bates number |
| EndBates | Ending Bates number |
| BegAttach | Beginning Bates number of the first document in an attachment range |
| EndAttach | Ending Bates number of the last document in an attachment range |
| Custodian | Name of the custodian the file was sourced from |
| Duplicate Custodian | Name(s) of any custodian of any deduplicated version(s) of the document |
| FileName | File name of the original file name |
| OrigFilePath | Path and file name in the ordinary course of business |
| DocExt | Native File extension |
| Hidden Type | Modifications to document (track changes, hidden spreadsheets, etc.) |
| Subject | Subject line extracted from an email message |
| Title | Title field extracted from the metadata of a non-email document |
| Author | Author field extracted from the metadata of a non-email document |
| From | From field extracted from an email message |
| To | To field extracted from an email message |
| CC | CC field extracted from an email message |
| BCC | BCC field extracted from an email message |
| DateRcvd | Received date of an email message |
| TimeRcvd | Received time of an email message |

| | |
|---|---|
| DateSent | Sent date of an email message |
| TimeSent | Sent time of an email message |
| DateCreated | Date that a file was created |
| Attach Count | The number of attachments to a document |
| TimeCreated | Time that a file was created |
| DateLastMod | Date that a file was last modified |
| TimeLastMod | Time that a file was last modified |
| SHA-1 or MD5 | SHA-1 or MD5 value for the document |
| FileDescription | File type of the document |
| Native File Path | Path to native file as produced |
| Page Count | Number of TIFF pages produced |
| Volume | The name of the CD, DVD, or hard drive |
| Full Text | Path to the full extracted text of the document |
| File Size | Size of file |

26. The Parties will cooperate, as appropriate, to facilitate the acquisition of appropriate licenses and technical information necessary to review Native Files. In the event that ESI is produced in a format that is not reasonably usable by the requesting party, the receiving party may request that the producing party produce such ESI in a different format, the production of which shall not be unreasonably withheld.

27. The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats. To the extent a response to discovery requires production of discoverable electronic information contained in a database or proprietary software platform, the Parties shall negotiate appropriate parameters for querying the database or proprietary software platform for discoverable information and generating a report in a reasonably usable and exportable electronic file (for example, Excel, CSV or SQL format).

28. To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party will remove duplicate ESI prior to producing documents. Removal of duplicate documents shall be done on exact duplicate documents (based on MD5 or SHA-1 hash values at the document level). Each Party shall make reasonable efforts to remove exact duplicate ESI across custodians and to produce searchable metadata in a "Duplicate Custodian" field for each produced document sufficient for the receiving party to identify all custodians of the produced document. If such a process is not possible, each Party will conduct deduplication only within a source (*e.g.,* within a custodian). The producing party will disclose which method of deduplication has been utilized. If during the course of its review, the producing party identifies a large number of duplicate documents, the Parties can confer regarding a custom deduplication protocol. No custom deduplication method will be implemented without the consent of the receiving party, and such consent shall not be unreasonably withheld.

29. When converting ESI from its native format into its production format: (i) all tracked changes shall be processed to make them visible if they existed when the file was collected; (ii) objects embedded in Microsoft Word and .RTF documents, which have been embedded with the "Display as Icon" feature, will be extracted as separate documents and treated like attachments to the document and other objects embedded in documents shall be produced as native files; (iii) author comments shall not be altered and shall be retained in the manner in which they existed when the file was collected; (iv) hidden columns and rows shall not be altered and shall be retained in the manner in which they existed when the file was collected; (v) presenter notes shall not be altered and shall be retained in the manner in which they existed when the file was collected; and (vi) auto-populated fields, with the exception of auto-populating "page number" fields, shall be replaced with text indicating the field name. For example, auto-populating "date" fields shall be replaced with the text "Date," and auto-

populating "file path" fields shall be replaced with the text "Path" (or other similar text) if possible.

30. If there is a conflict between the provisions of this Protocol and the Protective Order entered by the Court, the Protective Order shall control. This Protocol is fully subject to the Protective Order.

31. The Parties agree to confer within seven (7) days of the service of the first set of responses and objections about any technology processes that a producing party proposes to use to streamline the culling, review, and production of ESI. The Parties shall make good faith efforts to resolve any objections to the use of such technology or processes before seeking relief from the Court.

32. The Parties do not waive any objections to the production, discoverability, or confidentiality of Discovery Material, including, without limitation, objections regarding the burden, overbreadth or relevance of document requests related to such Discovery Material, or relating to the production of Discovery Material in a form specified in this Protocol. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Protocol.

DATED: July 22, 2015

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

   */s/ Timothy A. DeLange*

Blair A. Nicholas (Bar No. 178428)
blairn@blbglaw.com
Timothy A. DeLange (Bar No. 190768)
timothyd@blbglaw.com
Richard D. Gluck (Bar No. 151675)
rich.gluck@blbglaw.com
Brett M. Middleton (Bar No. 199427)
brettm@blbglaw.com
Matthew P. Jubenville (Bar No. 228464)
matthewj@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

```
                    -and-
        Gerald H. Silk
        jerry@blbglaw.com
        Avi Josefson
        avi@blbglaw.com
        1285 Avenue of the Americas, 38th Floor
        New York, NY 10019
        Telephone: (212) 554-1400
        Facsimile: (212) 554-1444
```

*Counsel for Lead Plaintiff Arkansas State Highway Employees Retirement System and Lead Counsel for the Class*

LATHAM & WATKINS LLP

          */s/ Anita P. Wu*

Peter A. Wald (Bar No. 85705)
Michele D. Johnson (Bar No. 198298)
Anita P. Wu (Bar No. 248876)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Phone: (415) 391-0060
Fax: (415) 395-8095
peter.wald@lw.com
michele.johnson@lw.com
anita.wu@lw.com

*Attorneys for Defendants OSI Systems, Inc., Deepak Chopra, Alan Edrick and Ajay Mehra*

# SIGNATURE CERTIFICATION

Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

DATED: July 22, 2015

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

*/s/ Timothy A. DeLange*
Timothy A. DeLange