1  BERNSTEIN LITOWITZ BERGER
       & GROSSMANN LLP
2  BLAIR A. NICHOLAS (Bar No. 178428)
   blairn@blbglaw.com
3  TIMOTHY A. DELANGE (Bar No. 190768)
   timothyd@blbglaw.com
4  NIKI L. MENDOZA (Bar No. 214646)
   nikim@blbglaw.com
5  12481 High Bluff Drive, Suite 300
   San Diego, California 92130
6  Telephone: (858) 793-0070
   Facsimile: (858) 793-0323
7

8  *Counsel for Lead Plaintiff Arkansas State Highway*
   *Employees Retirement System and Lead Counsel*
9  *for the Settlement Class*

10

11                  UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA
12                     WESTERN DIVISION

13  MARK ROBERTI, Individually and          Case No.:  2:13-cv-09174-MWF
    on Behalf of All Others Similarly
14  Situated,                                CLASS ACTION

15                                           **LEAD PLAINTIFF'S *EX PARTE***
                       Plaintiff,            **AND UNOPPOSED APPLICATION**
16                                           **FOR PRELIMINARY APPROVAL**
                                             **OF CLASS ACTION SETTLEMENT;**
17         v.                                **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES IN SUPPORT**
18                                           **THEREOF**
    OSI SYSTEMS, INC., DEEPAK
19  CHOPRA, ALAN I. EDRICK, and
    AJAY MEHRA,                               Judge:     Hon. Michael W. Fitzgerald
20                                            Courtroom:  1600

21                     Defendants.

22

23

24

25

26

27

28

**NOTICE OF *EX PARTE* APPLICATION**
**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT,** before the Honorable Michael W. Fitzgerald, United States District Court, Central District of California, located at 312 North Spring Street, Los Angeles, California, Lead Plaintiff, the Arkansas State Highway Employees Retirement System ("Lead Plaintiff" or "ASHERS"), has filed an *ex parte* and unopposed application for an Order pursuant to Fed. R. Civ. P. 23(e) preliminarily approving the Settlement in the above-captioned action that was achieved following a mediation process and a "Mediator's Recommendation," preliminarily certifying the action as a class action for settlement purposes, approving of the manner and form of notice to be sent to Settlement Class Members, and scheduling a hearing for consideration of final approval of the Settlement.

This application is made based on this *Ex Parte* and Unopposed Application, the Memorandum of Points and Authorities in support thereof, the Declaration of Timothy A. DeLange In Support of Lead Plaintiff's *Ex Parte* and Unopposed Application for Preliminary Approval of Class Action Settlement ("DeLange Declaration"), all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

The application is submitted *ex parte* pursuant to Judge Fitzgerald's Procedures for filing *ex parte* applications for routine exceptions to the Local Rules. The Unopposed Application seeks preliminary approval of the proposed class action settlement, such that notice of the proposed settlement can be sent to the proposed Settlement Class, and a hearing scheduled for consideration of final approval of the proposed Settlement after the Settlement Class has received notice and had an opportunity to be heard.

Lead Counsel has conferred with Defendants' Counsel, including by telephone and e-mail on August 20, 2015, and confirmed that Defendants, who have entered into the Stipulation and Agreement of Settlement, do not oppose this application. In

addition, the parties have agreed upon the forms of the proposed Preliminary Approval Order granting this application, the class notice for mailing, the summary notice for publication, and the proof of claim, which are submitted herewith as Exhibit 2 to the DeLange Declaration.

Pursuant to Judge Fitzgerald's Procedures, opposition papers, if any, would be due no later than one court day following the filing of this application, which is simultaneously being served on Defendants' Counsel, who is registered for ECF notification.

L.R. 7-19:  The contact information for Defendants' Counsel is as follows:

Latham & Watkins LLP
Peter A. Wald, Esq.
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 395-8006
Email:  peter.wald@lw.com
-and-
Michele D. Johnson, Esq.
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone:  (714) 540-1235
Email:  michele.johnson@lw.com
-and-
James H. Moon, Esq.
355 South Grand Ave
Los Angeles, CA 90071-1560
Telephone:  (213) 891-7551
Email:  james.moon@lw.com


Pursuant to the Declaration of Timothy A. DeLange submitted herewith, Lead Counsel has:  (a) advised counsel for all parties of the date and substance of the proposed *ex parte* application, and confirmed there is no opposition; and (b) advised the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I.   INTRODUCTION ............................................................................... 1

II.  HISTORY OF THE LITIGATION .................................................... 3

III. SETTLEMENT NEGOTIATIONS .................................................... 5

IV.  ARGUMENT ...................................................................................... 6

    A.   Preliminary Approval Is Warranted And Will Allow Lead Plaintiff To Notify The Settlement Class ............................................................... 6

        1.   The Settlement Was Vigorously Negotiated And Is Supported By Experienced Counsel .................................. 7

        2.   The Substantial Benefit Obtained For The Settlement Class, Especially In Light Of Serious Risks Of Lessor Or No Recovery, Supports Approval Of The Settlement ................. 9

        3.   The Stage Of The Proceedings And Discovery Completed Support Approval Of The Settlement .......................... 10

V.   THE STIPULATED PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................................. 12

    A.   Numerosity ................................................................................. 13

    B.   Commonality .............................................................................. 14

    C.   Typicality .................................................................................... 15

    D.   Adequacy .................................................................................... 16

    E.   Predominance And Superiority .................................................. 17

VI.  THE PROPOSED NOTICE TO THE SETTLEMENT CLASS IS ADEQUATE ............................................................. 18

VII. PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................ 20

VIII. CONCLUSION ................................................................................ 21

# TABLE OF AUTHORITIES

Case                                                                      Page

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................17, 18

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236
    (S.D.N.Y. Apr. 6, 2006).................................................................11

*In re Applied Micro Circuits Corp. Sec. Litig.*,
    No. 01 CV 0649 KAJB, 2003 WL 25419526 (S.D. Cal. July 15, 2003) ....................16

*Ballard v. Equifax Check Servs., Inc.*,
    186 F.R.D. 589 (E.D. Cal. 1999) ..............................................................14

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)................................................................12, 17, 18

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) .............12, 13, 15, 17

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ..............................................................7

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
    No. 12-cv-1737 JM, 2015 WL 224631 (S.D. Cal. Jan. 15, 2015)........................13, 15

*In re Celera Corp. Sec. Litig.*,
    No. 10-cv-02604-EJD, 2014 WL 722408 (N.D. Cal. Feb. 25, 2014) ........................13

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ........................................................11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..............................................................7

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..............................................................6

*Dean v. China Agritech*,
    No. CV 11-01331-RGK, 2012 WL 1835708 (C.D. Cal. May 3, 2012) ....................14

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)............................7

*In re Emulex Corp., Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ...................................................................................17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ..................................................................................................17

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976).......................................................................................................12

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ........................................7

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ..................................................................................15, 16

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ........................................................................................13

*In re Heritage Bond Litig.*,
    Nos. MDL 02-ML-1475 DT, et al., 2004 WL 1638201
    (C.D. Cal. July 12, 2004) ..............................................................................................14

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983).......................................................................................................12

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ 10071 (HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003)...................17

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................8

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011).............................................................................13, 15

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................................20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...................8

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ........................................................................................16

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1236 (9th Cir. 1998) ................................................................. 11

*Maiman v. Talbott*,
    SACV No. 09-00012 AG, 2011 U.S. Dist. LEXIS 98243
    (C.D. Cal. Aug. 29, 2011) ................................................................... 15

*In re Micron Techs., Inc. Sec. Litig.*,
    247 F.R.D. 627 (D. Idaho 2007) ......................................................... 15

*In re Nissan Radiator/Transmission Cooler Litig.*,
    No. 10 CV 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ...... 11

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ...... 20

*In re Rambus Inc. Derivative Litig.*,
    No. C-06-3513 JF, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ............ 10

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................. 18

*Santos v. Camacho*,
    Nos. Civ. 04-00006, 04-00038, 04-00049, 2007 WL 81868
    (D. Guam Jan. 9, 2007) ...................................................................... 20

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................... 8

*Schneider v. Traweek*,
    No. CV 88-0905 RG, 1990 WL 132716 (C.D. Cal. July 31, 1990) ........ 12

*In re Sinus Buster Prods. Consumer Litig.*,
    No. 12-cv-2429 (ADS), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .... 11

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................. 9

*In re TD Ameritrade Account Holder Litig.*,
    Nos. C07-2852 SBA, C07-4903 SBA, 2011 WL 4079226
    (N.D. Cal. Sept. 13, 2011) ................................................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................... 12

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................... 7

*In re UTStarcom, Inc., Sec. Litig.*,
    No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) .......................... 15

*In re VeriSign, Inc. Sec. Litig.*,
    No. C 02-02270 JW, 2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ............... 13, 14, 16

*In re Veritas Software Corp. Sec. Litig.*,
    496 F.3d 962 (9th Cir. 2007) ...................................................................... 18

*Williams v. Costco Wholesale Corp.*,
    No. 02 CV 2003 IEG, 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) .......................... 6, 7

*In re Wireless Facilities, Inc. Sec. Litig.*,
    253 F.R.D. 630 (S.D. Cal. 2008) .................................................................. 18

STATUTES, RULES & REGULATIONS, AND OTHER AUTHORITIES

15 U.S.C.
    § 78u-4(a)(7) ........................................................................................ 19

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................... passim

Alba Conte & Herbert Newberg, *Newberg on Class Actions*
    § 22:16 (4th ed. 2002) .............................................................................. 13

H.R. Rep. No. 104-369, at 29 (1995) (Conf. Rep.) ......................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, the Arkansas State Highway Employees Retirement System ("ASHERS" or "Lead Plaintiff"), respectfully submits this Memorandum of Points and Authorities in support of its *ex parte* unopposed application for: (i) preliminary approval of the proposed Settlement between Lead Plaintiff on behalf of itself and the proposed Settlement Class, and defendants OSI Systems, Inc. ("OSI"), Deepak Chopra, Alan I. Edrick, and Ajay Mehra (collectively, "Defendants"); (ii) certification of the proposed Settlement Class for purposes of the Settlement; (iii) approval of the form and manner of the settlement notice to Settlement Class Members; and (iv) the scheduling of a hearing ("Final Approval Hearing" or "Settlement Hearing") on final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses. The requested relief is set forth in the accompanying agreed-upon form of proposed Preliminary Approval Order, attached as Exhibit 2 to the DeLange Declaration.

## I.    INTRODUCTION

Consistent with this Court's Order directing that the parties participate in a mediation process (ECF No. 72), and following extensive litigation and negotiations before a highly-respected mediator, Lead Plaintiff and Defendants have reached an agreement to resolve this securities class action in its entirety for $15 million in cash (the "Settlement Amount"). The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement (the "Stipulation" or "Stip."), attached as Exhibit 1 to the DeLange Declaration.[1]

---

[1] The "Settlement Class" is defined as all persons and entities that purchased or otherwise acquired the common stock of OSI Systems, Inc. between January 24, 2012, and December 6, 2013, inclusive, and were damaged thereby. Defendants and their related parties are excluded from the Settlement Class, as well as any putative Settlement Class Members that exclude themselves by submitting a request for exclusion in accordance with requirements set forth in the Notice that is accepted by the Court.

1        The parties reached settlement only after over 1½ years of hard-fought litigation.

2   By the time the Settlement was reached, Lead Plaintiff was fully informed about the

3   strengths and weaknesses of the case.  This recovery was possible only after the filing of

4   an initial complaint; the appointment of ASHERS as the Lead Plaintiff pursuant to the

5   Private Securities Litigation Reform Act of 1995 (the "PSLRA"); Lead Counsel's

6   extensive investigation and drafting of the detailed 102-page amended complaint; full

7   briefing and a hearing on Defendants' motion to dismiss; serving and responding to

8   discovery requests; the filing of Lead Plaintiff's motion for class certification, supported

9   by an expert report; and consultation with experts on issues such as causation,

10   materiality, and damages.

11        The Settlement was reached after extensive arm's-length negotiations overseen by

12   an experienced mediator and former federal judge, the Hon. Layn R. Phillips.  Based on

13   his oversight of the negotiations, including a full-day mediation session, preceded by

14   voluminous and detailed mediation submissions, and followed by additional

15   negotiations, Judge Phillips made a "Mediator's Recommendation" to resolve the Action

16   for $15 million, which recommendation the parties ultimately accepted.

17        Lead Plaintiff and Lead Counsel – based upon their experience, evaluation of the

18   facts and applicable law and recognition of the amount of the Settlement, and the risk

19   and expense of continued litigation – submit that the proposed Settlement is fair,

20   reasonable and adequate.  The Settlement represents an excellent result and is in the best

21   interests of the Settlement Class.  Lead Plaintiff respectfully requests that the Court grant

22   preliminary approval of the Settlement so that notice may be provided to the Settlement

23   Class.  Lead Plaintiff requests that this Court enter the parties' agreed-upon form of

24   Preliminary Approval Order, Exhibit 2 to the DeLange Declaration, which among other

25   things will:

26   _____

27   Stip. ¶1(pp).  All capitalized terms not otherwise defined herein shall have the same

28   meaning ascribed to them in the Stipulation.

  (i)  preliminarily approve the Settlement on the terms set forth in the Stipulation;

  (ii)  certify the proposed Settlement Class for purposes of the Settlement;

  (iii)  approve the form and content of the parties' agreed-upon form of Notice, Proof of Claim Form, and Summary Notice attached as Exhibits A-1, A-2, and A-3 to the Stipulation;

  (iv)  find that the parties' proposed procedures for distribution of the Notice and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Fed. R. Civ. P. 23, and the PSLRA; and

  (v)  set a schedule and procedures for:  mailing and publishing the Notice and Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for attorneys' fees and Litigation Expenses; and submitting papers in support of final approval of the Settlement, and the Final Approval Hearing.

## II. <u>HISTORY OF THE LITIGATION</u>

  Lead Plaintiff brings this putative private securities fraud class action on behalf of all persons and entities who purchased or otherwise acquired OSI common stock between January 24, 2012, and December 6, 2013, inclusive (the "Settlement Class Period"), and were damaged thereby, against OSI, a provider of specialized electronic systems for the homeland security, defense, and aerospace industries; its Chairman of the Board of Directors, President and Chief Executive Officer Deepak Chopra; its Chief Financial Officer and Executive Vice President Alan I. Edrick; and its Executive Vice President and Director Ajay Mehra, for violations of sections 10(b), 20(a) and 20(A) of the Exchange Act of 1934 (the "Exchange Act").  Lead Plaintiff alleges that during the Settlement Class Period, Defendants made materially false and misleading statements about OSI and its security division, Rapiscan, which manufactures and sells security-screening and threat-detection products, and Rapiscan's contracts with the U.S.

1  Government related to body scanner software and checkpoint baggage scanners.  Lead

2  Plaintiff further alleges that the prices of OSI securities were artificially inflated as a

3  result of Defendants' allegedly false and misleading statements, and declined when the

4  truth was revealed.

5  The initial class action complaint was filed on December 12, 2013.  Following

6  briefing and pursuant to the PSLRA, the Court appointed ASHERS as the Lead Plaintiff,

7  and approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP

8  as Lead Counsel for the putative class.

9  Lead Counsel conducted a thorough investigation in preparation for drafting the

10  Amended Class Action Complaint (the "Complaint"), which Lead Plaintiff filed on

11  May 20, 2014.  Lead Counsel's investigation included, among other things, a review and

12  analysis of:  (i) OSI's public filings with the U.S. Securities and Exchange Commission

13  ("SEC"); (ii) the reports of securities and financial analysts concerning OSI's business;

14  (iii) press releases, news articles, and other public statements concerning the Defendants;

15  and (iv) interviews with numerous former OSI employees.

16  Following extensive briefing and a hearing on Defendants' motion to dismiss, on

17  February 27, 2015, the Court entered a detailed 20-page Order denying Defendants'

18  motion to dismiss in its entirety.  The Court held that:  (1)  Lead Plaintiff's allegations

19  regarding the falsity of Defendants' statements were "sufficiently particular" and Lead

20  Plaintiff had "'clearly served the PSLRA's purpose by putting Defendants on notice of

21  the specific misstatements and omissions at issue'"; and (2) when viewed holistically,

22  Lead Plaintiff's allegations adequately alleged a "strong inference of scienter."   Order

23  Denying Defendants' Motion To Dismiss Plaintiff's Amended Class Action Complaint

24  ("Order"), 2015 WL 1985562, at *10, 13-14 (C.D. Cal. Feb. 27, 2015).

25  Following the Court's Order sustaining the Complaint, the discovery stay imposed

26  by the PSLRA was lifted.  On April 6, 2015, Lead Plaintiff served its first set of requests

27  for production of documents.  On April 8, 2015, the parties filed their Joint Rule 26(f)

28  Report setting forth, among other things, the parties' respective positions on the

anticipated percipient witnesses, key documents, deponents, written discovery, as well as their proposed deadlines for completion of fact and expert discovery, dispositive motions, briefing on Lead Plaintiff's class certification motion, and trial.  ECF No. 66. As required by Local Rule 15, the parties also agreed upon a settlement procedure, specifically, that they would participate in a non-judicial dispute resolution proceeding by retaining a private mediator.

On April 17, 2015, the parties served their respective initial disclosures, and thereafter the parties began propounding and responding to discovery requests, and Defendants began producing thousands of pages of documents to Lead Plaintiff.  The parties also submitted a Stipulation and [Proposed] Order Regarding Joint Protocol for Production of Discovery Material, entered by the Court on July 31, 2015.  ECF No. 78.

Following a Scheduling Conference held on June 8, 2015, the Court entered and then amended an Order Re Jury Trial.  The Court scheduled, among other things, dates for non-expert discovery cut-off (November 20, 2015), dispositive motion hearing cut-off (April 11, 2016), and a trial date of July 19, 2016.  ECF No. 73.  The Court also entered an Order that the parties must attend private mediation no later than April 26, 2016.  ECF No. 72.

On June 30, 2015, Lead Plaintiff filed its motion for class certification, supported by an expert declaration of Bjorn I. Steinholt, CFA.  ECF Nos. 74-75.

III.   **SETTLEMENT NEGOTIATIONS**

The parties engaged in extensive arm's-length negotiations.  On June 12, 2015, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before Judge Phillips.  In advance of that session, the parties submitted to Judge Phillips detailed confidential mediation statements and exhibits, which addressed the issues of both liability and damages.  The session ended without any agreement being reached.

Over the course of the next 1½ months, Judge Phillips conducted further discussions with the parties which culminated in the reaching of an agreement in principle to settle the Action following Judge Phillips' "Mediator's Recommendation."

The Mediator's Recommendation was based on Judge Phillips' review and understanding of the mediation statements and filings in the Action, the mediation session, his separate caucus sessions with each party, post-mediation separate calls, and the overall negotiation process, and set forth the general recommended monetary and non-monetary terms, including the release terms and a cash payment by or on behalf of Defendants for $15 million for the benefit of the Settlement Class, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers. *See* Stip. ¶J.

If the Court grants preliminary approval of the Settlement, the Settlement Amount of $15 million in cash will be deposited into an Escrow Account at Signature Bank within fifteen business days after entry of the Preliminary Approval Order.[2]

## IV.   ARGUMENT

### A.   Preliminary Approval Is Warranted And Will Allow Lead Plaintiff To Notify The Settlement Class

In considering whether to grant preliminary approval of a class action settlement under Federal Rule of Civil Procedure 23(e), courts make a preliminary evaluation of the fairness of the settlement prior to issuing notice to the class and prior to holding a final approval hearing.  If the proposed settlement falls within the range of what could be found "fair, adequate, and reasonable," preliminary approval is appropriate, notice may be given to the proposed class and a hearing for final approval can be scheduled. *Williams v. Costco Wholesale Corp.*, 2010 WL 761122, at *5-6 (S.D. Cal. Mar. 4, 2010); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "Given that some . . . factors cannot be fully assessed until the Court conducts the Final Approval

---

[2] *See* Stip. ¶10.  Lead Plaintiff proposes Signature Bank as the Escrow Agent.  Lead Counsel has negotiated competitive and favorable terms with Signature Bank, which has successfully served as the escrow agent for numerous other class action settlements, including, for example, *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, 08-cv-1713 (PKC) (E.D.N.Y.).

Hearing, 'a full fairness analysis is unnecessary at this stage.'" *Williams*, 2010 WL 761122, at *5 (citation omitted).   Instead, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible [judicial] approval." *Id.* at *5-6.  Later, at the final approval stage, the Court answers the ultimate question:  whether the Settlement is fair, reasonable and adequate.  In making that ultimate determination, the Court reviews: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of Class members to the proposed settlement.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375-76 (9th Cir. 1993).

Here, Lead Plaintiff is requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement.  The proposed Settlement provides a Settlement Amount of $15 million in cash, and unquestionably is beneficial to the Settlement Class.  As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that this Settlement is well within the range of possible approval.

## 1.   The Settlement Was Vigorously Negotiated And Is Supported By Experienced Counsel

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight.[3]

_____

[3] *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2 (C.D.

Here, the parties have been litigating this case for approximately 1½ years since its commencement in 2013. Throughout the litigation and settlement negotiations, Defendants have been represented by experienced counsel from the national law firm Latham & Watkins LLP. Counsel for Defendants were also well-informed regarding the case, and their representation of the Defendants was no less rigorous than Lead Counsel's representation of the Settlement Class. As a result, the parties' settlement negotiations were hard-fought, and the proposed Settlement was reached only after an informed and highly regarded and experienced mediator made a "Mediator's Recommendation," which the parties separately accepted. As courts within this Circuit and nationwide have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable") (citation omitted). Moreover, the fact that the initial mediation session was unsuccessful, and required further negotiations, further demonstrates that the Settlement was the product of arm's-length negotiations. *See, e.g., Hicks v. Morgan Stanley & Co.,* 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.") (citation omitted). This factor supports a finding that the Settlement is fair, adequate, and reasonable for purposes of preliminary approval. A

---

Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).

"proposed settlement [that] appears to be the product of serious, informed, non-collusive negotiations" should be given effect.[4]

### 2. The Substantial Benefit Obtained For The Settlement Class, Especially In Light Of Serious Risks Of Lessor Or No Recovery, Supports Approval Of The Settlement

As set forth above, the Settlement provides for the recovery of $15 million for the benefit of the Settlement Class. If the Action had continued, Lead Plaintiff faced substantial risks that made any recovery uncertain. Indeed, issues of liability and damages were highly contested. For example, Lead Plaintiff contends that Defendants made false and misleading statements about Automated Threat Recognition ("ATR") software during 2012, including that: (i) it was "business as usual"; (ii) the software was "undergoing its final testing"; (iii) Defendants had completed their "side" of development; and (iv) the software "could lead to more sales in the future." At the motion to dismiss, the Court agreed that these statements "'created an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed].'" Order, 2015 WL 1985562, at *9. Defendants, however, have contended, and, absent settlement would continue to contend – both at summary judgment and at trial – that these statements are demonstrably true. In support, Defendants would likely develop evidence that Rapiscan did, in fact, send a version of the software and three scanners to the U.S. Transportation Security Administration ("TSA") for testing. Defendants would likely use such evidence to argue that statements such as the software is "undergoing its final testing" and that Defendants had "completed our side" of development were

---

[4] *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("As noted in the Manual for Complex Litigation, Second, '[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . .'") (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

technically true.   Although Lead Plaintiff expected to develop evidence that such statements omitted material information and left investors with an inaccurate impression of the true state of affairs, it would likely be a contested factual issue for a jury.

Defendants would also attempt to argue, and convince a jury, that they immediately notified the TSA of the problems and were working in good faith with the U.S. Government to resolve the problems, and that the Company was never actually suspended or debarred, and thus scienter is not established.   Although at the pleading stage the Court held that, when viewed holistically, the Complaint's allegations "sufficiently bolster the inference of scienter to survive the Motion to Dismiss," the Court also noted that "none of the statements or evidence in the Amended Complaint independently establishes scienter."   Order, 2015 WL 1985562, at *11.   Absent settlement, Defendants would have had the opportunity at summary judgment and trial to further contest scienter.

Even assuming that Lead Plaintiff prevailed at summary judgment and trial in establishing material untrue statements and omissions that were made with scienter, Defendants would likely dispute loss causation and recoverable damages.   The proposed Settlement, when viewed in the context of these risks and the uncertainties involved with any litigation, is extremely beneficial to the Settlement Class.

### 3.   The Stage Of The Proceedings And Discovery Completed Support Approval Of The Settlement

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case are additional factors that courts consider in determining the fairness, reasonableness, and adequacy of a settlement.   *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009).   The parties need not have engaged in extensive formal discovery as long as they have

engaged in sufficient investigation of the facts to enable the parties and the Court to intelligently make an appraisal of the Settlement.[5]

Here, prior to agreeing to the Settlement, Lead Counsel thoroughly evaluated the strengths and weaknesses of Lead Plaintiff's claims. This included an extensive investigation of the facts, which encompassed a thorough review of, among other things: (i) OSI's public SEC filings; (ii) the reports of securities and financial analysts concerning OSI's business; and (iii) press releases, news articles, and other public statements concerning the Defendants. *See* Complaint Preamble (ECF No. 44 at 2). In addition, Lead Counsel identified and contacted numerous former OSI employees with direct knowledge of the alleged facts – including a Senior Test Engineer at Rapiscan, a Director of International Programs at Rapiscan, a Field Service Engineer for Rapiscan, a Director of Global Sales Operations at Rapiscan, and a Vice President of Customer Service for Rapiscan. The accounts of these "confidential witnesses" interviewed by Lead Counsel are described in great detail in the Complaint, and the Court's Order

---

[5] *See, e.g., Mego Fin.*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alas. P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *see also In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (finding the factor to weigh in favor of approval where "[a]lthough the parties have not engaged in extensive discovery . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) (finding this factor to weigh in favor of approval where "Class Counsel undertook a comprehensive pre-suit investigation lasting over a year" and "Class Counsel and Defendants engaged in certification discovery involving the exchange of documents and several depositions").

sustaining the Complaint specifically references the confidential witness accounts as supporting an inference of scienter.

In addition to its thorough investigation, Lead Counsel gained additional insight into the potential strengths and weaknesses of the claims and defenses through the full briefing and hearing on Defendants' motion to dismiss, through the parties' exchange of discovery requests and responses and initial disclosures, and consultation with experts on various specialized subjects.  And, finally, Lead Counsel became further informed regarding the facts and legal issues through the exchange of comprehensive mediation statements, participation in the mediation, and additional related negotiations and perspectives of the Mediator.  In sum, the parties reached a settlement when they were well informed as to the facts, legal issues, and risks of continuing the litigation.

## V. THE STIPULATED PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The parties have stipulated to certification of the Settlement Class for settlement purposes.  *See* Stip. ¶2.  The Supreme Court has repeatedly recognized the importance of class actions in redressing violations of the federal securities laws.[6]  In recognition of the significant role that Rule 23 plays in protecting investors, "[t]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."[7]  As summarized

_____

[6] *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . ."); *Basic Inc. v. Levinson*, 485 U.S. 224, 229-30, 249-50 (1988); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 n.10 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976).

[7] *Schneider v. Traweek*, 1990 WL 132716, at *6 (C.D. Cal. July 31, 1990) (citing *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)). Indeed, courts in the Ninth Circuit have long recognized that "[c]lass actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in

below and detailed in Lead Plaintiff's brief and supporting expert report ("Steinholt Report") in support of its motion for class certification for litigation purposes (ECF Nos. 74-75), incorporated by reference herein, this case satisfies Rule 23.

### A. **Numerosity**

"Numerosity" is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean impossible; only that it would be difficult or inconvenient to join all members of the class.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  "'[F]ederal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity, often looking at the number of shares traded or transactions completed rather than seeking to determine directly the number of potential class members involved.'"  *VeriSign*, 2005 WL 7877645, at *4; *THQ*, 2002 WL 1832145, at *3 ("given the number of shares of THQ traded during the Class Period . . . common sense dictates that the proposed class is surely sufficiently large to make joinder impracticable").  Indeed, "[i]n cases involving securities traded on national stock exchanges, numerosity is practically a given. 'Defendants normally cannot and rarely do contest joinder impracticability in class actions brought on behalf of shareholders or traders in publicly owned and nationally listed corporations.'"  *VeriSign*, 2005 WL 7877645, at *4 (quoting Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 22:16 (4th ed. 2002)).

Here, during the Settlement Class Period, there were nearly 20 million shares of OSI's stock outstanding and the average daily volume traded was approximately

---

challenging wealthy corporate defendants." *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005), Order amended Jan. 31, 2005; *see Blackie*, 524 F.2d at 911; *see also In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *1 (S.D. Cal. Jan. 15, 2015); *In re Celera Corp. Sec. Litig.*, 2014 WL 722408 (N.D. Cal. Feb. 25, 2014); *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 575 (C.D. Cal. 2012); *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011).

194,000 shares.   Steinholt Report, ¶23.   Accordingly, there are thousands of geographically-disbursed investors that purchased OSI's stock during the Settlement Class Period, and numerosity is therefore satisfied.  *Dean v. China Agritech*, 2012 WL 1835708, at *4 (C.D. Cal. May 3, 2012) (classes of more than forty investors satisfies numerosity in a securities class action); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (accord).

### B.   Commonality

As with numerosity, the Rule 23(a)(2) commonality requirement "is a prerequisite which plaintiffs generally . . . satisfy very easily."[8]  Here, there are numerous legal and factual questions that are common to all Settlement Class Members, including for example, whether Defendants' statements and omissions throughout the Settlement Class Period regarding OSI's ATR software and its Advanced Technology 2 ("AT-2") baggage and parcel scanners were materially false and misleading.

When, as here, defendants allegedly engage in a common course of conduct impacting all class members, commonality is satisfied.  *See*, *e.g.*, *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594-95 (E.D. Cal. 1999) ("A common nucleus of operative fact is typically found where 'defendants have engaged in standardized conduct toward members of the proposed class.'").  Courts routinely recognize that securities-fraud actions alleging a common course of conduct based on a "fraud on the

---

[8] *VeriSign*, 2005 WL 7877645, at *5.  It is not necessary that all questions of fact and law be common to satisfy the rule.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *In re Heritage Bond Litig.*, 2004 WL 1638201, at *3 (C.D. Cal. July 12, 2004) ("it is not necessary that every issue of law or fact be identical for all class members").  "[E]ven a single [common] question will do."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556, 2562 (2011).

market" satisfy commonality.  *See, e.g., Bridgepoint*, 2015 WL 224631, at *6; *Radient*, 287 F.R.D. at 574-75.[9]

### C.    Typicality

"Typicality" is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement 'is to assure that the interest of the named representative aligns with the interests of the class.'"  *Radient*, 287 F.R.D. at 569-70 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The test is not demanding, and focuses on whether "'other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011) (citing *Hanon*, 976 F.2d at 508); *In re UTStarcom, Inc., Sec. Litig.*, 2010 WL 1945737, at *5 (N.D. Cal. May 12, 2010).  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

---

[9] Varying damages between investors – that arise as a result of buying and selling at different times during the Settlement Class Period – do not defeat commonality.  *See, e.g., Radient*, 287 F.R.D. at 569 ("the Ninth Circuit has noted that '[c]onfronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.'") (citing *Blackie*, 524 F.2d at 902); *Maiman v. Talbott*, 2011 U.S. Dist. LEXIS 98243, at *12 (C.D. Cal. Aug. 29, 2011) ("'[C]ommonality is easily met in cases where class members all bought or sold the same stock in reliance on the same disclosures made by the same parties,' even if damages vary"); *see also In re Micron Techs., Inc. Sec. Litig.*, 247 F.R.D. 627, 632 (D. Idaho 2007) (commonality is satisfied where plaintiffs allege a single fraudulent scheme that affected each member of the class).  Indeed, in this Settlement such variations are addressed by the Plan of Allocation for disseminating the Net Settlement Fund.

1    Here, the claims of the Settlement Class and the Lead Plaintiff are co-extensive.

2    The same proof would be needed to establish the claims, which arise out of the same

3    alleged wrongful course of conduct.  The alignment of Lead Plaintiff's interests with

4    those of the Settlement Class satisfies the typicality requirement.  *See Hanon*, 976 F.2d

5    at 508.

6        **D.    Adequacy**

7        "Adequacy" is met when "the representative parties will fairly and adequately

8    protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit has

9    recognized two criteria for determining adequacy.  A representative is adequate where

10   (a) there is no conflict of interest between the representative and its counsel and absent

11   class members, and (b) the representative and its counsel will "prosecute the action

12   vigorously on behalf of the class."  *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight*

13   *Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).  The purpose of adequacy "is

14   to protect the legal rights of absent class members."  *VeriSign*, 2005 WL 7877645, at *8.

15   Here, Lead Plaintiff's interests are co-extensive with the Settlement Class Members – no

16   conflict exists.  Lead Plaintiff sustained losses as a result of the same alleged material

17   misrepresentations and omissions that injured the Settlement Class.  *See VeriSign*, 2005

18   WL 7877645, at *8 (finding adequacy where lead plaintiffs' claims and the unnamed

19   class members' claims do not conflict because they all arise out of the same set of facts);

20   *In re Applied Micro Circuits Corp. Sec. Litig.*, 2003 WL 25419526, at *5 (S.D. Cal.

21   July 15, 2003) (finding adequacy where the interests of the class representatives are

22   coextensive with the class because they bring identical claims under federal securities

23   laws).  Moreover, ASHERS and its counsel have repeatedly demonstrated their

24   commitment to pursuing the interests of the Settlement Class, through both the vigorous

25   prosecution and the Settlement of the claims.  ASHERS's counsel, Bernstein Litowitz

26   Berger & Grossmann LLP, has a proven track record of success in complex cases such

27   as this one and has been prosecuting securities class actions for over 25 years.  *See*

28   Bernstein Litowitz Firm Resume, ECF No. 75-2.  Moreover, ASHERS is precisely the

1  type of institutional investor that Congress sought to empower to act as representative

2  plaintiffs in securities class actions when it enacted the Private Securities Litigation

3  Reform Act of 1995.  *See* H.R. Rep. No. 104-369, at 29 (1995) (Conf. Rep.).

4        **E.**   **Predominance And Superiority**

5        Rule 23(b)(3) requires that, in addition to meeting the prerequisites of Rule 23(a),

6  Lead Plaintiff must demonstrate that: (1) common questions of law or fact predominate

7  over individual questions; and (2) a class action is superior to other available methods of

8  adjudication.  *In re Juniper Networks, Inc. Sec. Litig.,* 264 F.R.D 584, 590 (N.D. Cal.

9  2009).  The requirement "is readily met in securities-fraud class actions."[10]  Common

10  questions of law and fact predominate where, as in this case, the Complaint alleges a

11  "common course of conduct" that affects all Settlement Class Members in the same

12  manner, demonstrating common questions predominate.  *See Blackie*, 524 F.2d at 902-

13  03. Rule 23(b)(3) is also satisfied because a class resolution is "superior to other

14  available methods for the fair and efficient adjudication the controversy."  *Id.* at 901

15  n.18. If Lead Plaintiff and each of the Settlement Class Members were to bring

16  individual actions, each would be required to prove the same wrongdoing by Defendants

17  to establish liability.  Class certification promotes judicial efficiency by permitting

18  common claims and issues to be resolved only once with a binding effect on all parties.

19  *See Juniper,* 264 F.R.D. at 592.  In addition, because reliance is presumed, individual

20  issues of proof do not predominate, and a class may be properly certified.  *Basic*, 485

21  U.S. at 247; *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011)

22  ("Because the market 'transmits information to the investor in the processed form of a

23  market price,'" it can be assumed "that an investor relies on public misstatements

24  

25  [10] *Hicks v. Morgan Stanley & Co.*, 2003 WL 21672085, at *1 n.8 (S.D.N.Y.

26  July 16, 2003) (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *THQ*,

27  2002 WL 1832145, at *8; *Hanlon*, 150 F.3d at 1022; *In re LDK Solar Sec. Litig.*, 255

   F.R.D. 519, 530 (N.D. Cal. 2009); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721

28  (C.D. Cal. 2002).

1  whenever he 'buys or sells stock at the price set by the market.'") (citing *Basic*, 485 U.S.

2  at 244, 247); *see also* Steinholt Report, 25-26 (explaining the efficiency of the market

3  for OSI common stock).  Moreover, concerns about whether individual issues would

4  create intractable management problems at trial are not a concern when the proposal is

5  that the case be settled and there is no trial.  *Amchem,* 521 U.S. at 593 ("Whether trial

6  would present intractable management problems . . . is not a consideration when

7  settlement-only certification is requested").

8  **VI.  THE PROPOSED NOTICE TO THE**
   **SETTLEMENT CLASS IS ADEQUATE**

9

10  Notice of a proposed settlement must be given to class members in the most

11  practicable manner under the circumstances, describing the terms of the settlement in

12  sufficient detail to alert those with adverse viewpoints to investigate and to come

13  forward and be heard.  S*ee* Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it

14  'generally describes the terms of the settlement in sufficient detail to alert those with

15  adverse viewpoints to investigate and to come forward and be heard.'"  *Rodriguez v.*

16  *West Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009) (citations omitted).  In addition,

17  pursuant to the PSLRA, "every settlement notice must include a statement explaining a

18  plaintiff's recovery."  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636

19  (S.D. Cal. 2008) (citing *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th

20  Cir. 2007)).

21  Here, the parties' agreed-upon form of proposed Notice to the Settlement Class

22  (Exhibit A-1 to the Stipulation) is adequate and complies with due process, Rule 23, and

23  the PSLRA.  The proposed Notice informs the Settlement Class of, among other things:

24  (1) the amount of the Settlement; (2) the reasons why the parties propose the Settlement;

25  (3) the estimated average recovery per damaged share of OSI common stock; (4) the

26  maximum amount of attorneys' fees and expenses that will be sought; (5) the name,

27  telephone number, and address of representatives of Lead Counsel who will be

28  reasonably available to answer questions from Settlement Class Members concerning

matters contained in the Notice; (6) the right of Settlement Class Members to object to the Settlement or seek exclusion from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events.  15 U.S.C. § 78u-4(a)(7). The Notice explains that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim Forms (the form of which has been agreed to by the parties, at Exhibit A-2 to the Stipulation) pursuant to the Plan of Allocation proposed by Lead Plaintiff and included in the Notice.[11]

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim Form (Exhibits A-1 and A-2 to the Stipulation) to Settlement Class Members who can be identified with reasonable effort, including through information to be provided by Defendants.[12]  The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners.  Additionally, Lead Counsel will cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published in the national edition of *Investor's Business Daily*, and over the *PR Newswire*.  Courts

----

[11]  As explained in the Notice, Lead Counsel will apply to the Court for an award of attorneys' fees (in the amount not to exceed 20% of the Settlement Amount) and Litigation Expenses (not to exceed $300,000), plus interest at the same rate and for the same time period as earned by the Settlement Amount.  In accordance with the PSLRA, Lead Counsel may also apply for reimbursement of the costs and expenses of Lead Plaintiff (including lost wages) directly related to its representation of the Settlement Class.

[12] Lead Plaintiff requests that the Court approve retention of A.B Data, Ltd. ("A.B. Data") as the claims administrator for this case.  A.B. Data was selected by Lead Plaintiff following a competitive bidding process, and has administered numerous complex securities class action settlements, including, for example, *In re Anadarko Petroleum Corp. Class Action Litig.* (S.D. Tex.), *Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.* (E.D. Wis.), *Wyatt v. El Paso Corp.* (S.D. Tex.), *In re Fannie Mae 2008 Sec. Litig.* (S.D.N.Y.), and *In re Massey Energy Co. Sec. Litig.* (S.D. W. Va.).

routinely find that comparable notice procedures meet the requirements of due process, Rule 23, and the PSLRA.[13]

## VII. PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff submits the following unopposed proposed schedule for the Settlement-related events in this case. The proposed approximate dates in the right column are examples that respectfully assume that the instant, *ex parte* unopposed application is granted on or before September 4, 2015.

| Event | Proposed Due Date | Date/Deadline |
|---|---|---|
| Deadline for mailing the Notice and Proof of Claim Form to the Settlement Classes (which date shall be the "Notice Date") (Preliminary Approval Order ¶7(a)) | Not later than 10 business days after entry of Preliminary Approval Order | September 21, 2015 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(c)) | Not later than 5 business days after the Notice Date | September 28, 2015 |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶26) | 35 calendar days prior to Settlement Hearing | November 2, 2015 |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order ¶¶13, 17) | 21 calendar days prior to Settlement Hearing | November 16, 2015 |
| Deadline for filing reply papers (Preliminary Approval Order ¶26) | 7 calendar days prior to Settlement Hearing | November 30, 2015 |
| Settlement Hearing (Preliminary Approval Order ¶5) | 100 calendar days after filing of Stipulation | December 7, 2015, or the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶10) | 120 calendar days after the Notice Date | January 19, 2016 |

---

[13] *See, e.g., In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.,* 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007); *Santos v. Camacho*, 2007 WL 81868, at *7 (D. Guam Jan. 9, 2007).

## VIII. CONCLUSION

Lead Plaintiff respectfully requests that the Court grant its *ex parte* unopposed application for preliminary approval of the proposed Settlement such that notice may be sent to the Settlement Class and a hearing scheduled for consideration of final approval. The parties' agreed-upon form of proposed Preliminary Approval Order, and exhibits thereto, is attached as Exhibit 2 to the DeLange Declaration and is being e-mailed to the Court pursuant to Judge Fitzgerald's Procedures.

Dated:  August 21, 2015                         Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP


    */s/ Timothy A. DeLange*
    TIMOTHY A. DeLANGE

Blair A. Nicholas (Bar No. 178428)
blairn@blbglaw.com
Timothy A. DeLange (Bar No. 190768)
timothyd@blbglaw.com
Niki L. Mendoza (Bar No. 214646)
nikim@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Counsel for Lead Plaintiff Arkansas State Highway Employees Retirement System and Lead Counsel for the Class*