BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
blairn@blbglaw.com
TIMOTHY A. DELANGE (Bar No. 190768)
timothyd@blbglaw.com
NIKI L. MENDOZA (Bar No. 214646)
nikim@blbglaw.com
RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Counsel for Lead Plaintiff Arkansas State Highway
Employees Retirement System and Lead Counsel
for the Settlement Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MARK ROBERTI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OSI SYSTEMS, INC., DEEPAK CHOPRA, ALAN I. EDRICK, and AJAY MEHRA, <br><br> Defendants. | Case No.:  2:13-cv-09174-MWF <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge:     Hon. Michael W. Fitzgerald <br> Courtroom: 1600 <br> Date:      December 7, 2015 <br> Time:      10:00 a.m. |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT,** pursuant to the Court's Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 82), on December 7, 2015, at 10:00 a.m., before the Honorable Michael W. Fitzgerald, United States District Court, Central District of California, Courtroom No. 1600, 312 North Spring Street, Los Angeles, California 90012-4701, Lead Plaintiff, the Arkansas State Highway Employees Retirement System ("Lead Plaintiff" or "ASHERS") will and hereby does move the Court for an order, pursuant to Fed. R. Civ. P. 23(e), granting final approval of the Settlement in the above-captioned action (the "Action") on the terms set forth in the Stipulation and Agreement of Settlement dated as of August 20, 2015 (the "Stipulation," ECF No. 81-1), and approving the proposed Plan of Allocation for distribution of the settlement proceeds.[1]

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in Support Thereof; the Declaration of Timothy A. DeLange in Support of Final Approval of Class Action Settlement and Plan of Allocation, and Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("DeLange Decl."); the exhibits thereto; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

Lead Counsel is unaware of any opposition to this Motion. Pursuant to the Preliminary Approval Order, any objection to any aspect of the Settlement or the Plan of Allocation must be filed on or before November 16, 2015. To date, no objections have been filed.

---

[1] All capitalized terms that are not defined herein are defined in the Stipulation.

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................. 1

I.    INTRODUCTION ................................................................................ 1

II.   THE SETTLEMENT WARRANTS FINAL APPROVAL ................... 4

    A.    The Standards For Judicial Approval Of Class Action Settlements ........... 4

    B.    The Settlement Meets The Ninth Circuit Standard For Approval .............. 6

        1.    The Settlement Is The Result Of Arm's-Length Negotiations And A Mediator's Recommendation ......................... 6

        2.    Review Of The *Hanlon* Factors Supports Final Approval Of The Settlement ................................................................ 7

            a)    Lead Plaintiff's Case Is Strong, But Entails Risks ................. 7

            b)    The Expense, Complexity, And Likely Duration Of Further Litigation ....................................................... 11

            c)    The Risk Of Maintaining Class Action Status Throughout The Trial ............................................... 12

            d)    The Amount Obtained In Settlement ................................... 13

            e)    The Extent Of Discovery Completed And The Stage Of The Proceedings ....................................... 14

            f)    The Experience And Views Of Lead Plaintiff And Lead Counsel ................................................... 18

            g)    The Reaction Of The Settlement Class To The Proposed Settlement ......................................... 20

III.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ................................................... 20

IV.   THE SETTLEMENT CLASS RECEIVED ADEQUATE NOTICE .................. 21

V.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED ....................................................... 23

VI.   CONCLUSION ................................................................................... 24

## TABLE OF AUTHORITIES

<u>Case</u>                                                                                                          <u>Page</u>

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................................15

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..........................................................7

*Browne v. Am. Honda Motor Co.*,
   2010 WL 9499072 (C.D. Cal. July 29, 2010)...............................................11

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) .........................................................15

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ....................................................................20

*In re Critical Path, Inc. Sec. Litig.*,
   2002 WL 32627559 (N.D. Cal. June 18, 2002)...........................................17

*In re Datatec Sys., Inc. Sec. Litig.*,
   2007 WL 4225828 (D.N.J. Nov. 28, 2007) .................................................21

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980)....................................................................18

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001)..........................................................21

*Glass v. UBS Fin. Servs., Inc.*,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx. 452
   (9th Cir. 2009)...........................................................................................17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................5, 13

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005).......................................11, 18

*Hicks v. Stanley*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................................7

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................23

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...........................................7

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ......................................................................5

*Linney v. Cellular Alas. P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...........................................................15, 18

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ....................................................................10

*Lundell v. Dell, Inc.*,
  2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).................................................7

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ..........................................................13, 15, 17

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)..........................................................11, 20

*In re Nissan Radiator/Transmission Cooler Litig.*,
  2013 WL 4080946 (S.D.N.Y. May 30, 2013) ............................................15

*Nobles v. MBNA Corp.*,
  2009 WL 1854965 (N.D. Cal. June 29, 2009).............................................11

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ........................................................4, 5, 6, 13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)....................................4, 12, 13, 20

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................18

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...........................................23

*In re Rambus Inc. Derivative Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009)..........................................15, 20

*Roberti v. OSI Sys., Inc.*,
  2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ........................................... 3, 9

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................. 23

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................ 7

*In re Sinus Buster Prods. Consumer Litig.*,
  2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ........................................... 15

*In re TD Ameritrade Account Holder Litig.*,
  2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ...................................... 15, 18

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................ 8, 11

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) ......................................................... 12

*In re Wireless Facilities, Inc. Sec. Litig.*,
  253 F.R.D. 630 (S.D. Cal. 2008) ......................................................... 23

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................... 21

**STATUTES, RULES & REGULATIONS, AND SECONDARY AUTHORITIES**

15 U.S.C.
  § 78u-4(a)(7) ................................................................................ 22

Federal Rules of Civil Procedure
  Rule 23(c)(1)(C) ............................................................................ 13
  Rule 23(e)(1) ............................................................................... 22

H.R. Conf. Rep. 104-369 (1995) .............................................................. 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Lead Plaintiff and Lead Counsel have successfully settled this complex and difficult class action for a cash payment of $15 million for the benefit of the Settlement Class.[2]  Having evaluated the facts and applicable law, and recognizing the risks and expense of continued litigation, they submit that the proposed Settlement is in the best interests of the Settlement Class for all of the reasons discussed below and in the supporting declarations.  *See* Declaration of Arkansas State Highway Employees Retirement System in Support of Final Approval of Class Action Settlement and Plan of Allocation and an Award of Attorneys' Fees and Reimbursement of Expenses ("ASHERS Decl." or "Lead Plaintiff Decl."), attached as Exhibit 1 to the DeLange Decl.

As detailed in the DeLange Declaration, before entering into the Settlement, Lead Plaintiff and Lead Counsel knew well the strengths and weaknesses of the claims and defenses; conducted an extensive investigation, including interviewing numerous percipient witnesses; filed a comprehensive complaint; defeated Defendants' motion to dismiss; pursued discovery; filed a class certification motion supported by an expert report; conferred with experts and consultants; researched and briefed many of the core legal issues in the case; and participated in mediation and subsequent negotiations conducted by former U.S. District Judge and experienced mediator, Layn R. Phillips. *See* DeLange Decl. Sections II, III.A, III.B.

---

[2] The Settlement Class, as certified in the Court's Preliminary Approval Order, is defined as:  All persons and entities that purchased or otherwise acquired OSI common stock between January 24, 2012, and December 6, 2013, inclusive, and were damaged thereby.  Defendants and their related persons are excluded from the Settlement Class. Also excluded from the Settlement Class are any putative Settlement Class Members that exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in the Notice and that do not opt back into the Settlement Class. Lead Plaintiff respectfully refers the Court to the accompanying DeLange Declaration for a detailed description of the case and the Settlement.

1   Based on his experience, the parties' mediation submissions, and the mediation

2   and follow-up communications with the parties and Defendants' insurance carriers,

3   Judge Phillips made a double-blind "Mediator's Recommendation" to settle the Action

4   for $15 million in cash, which the parties separately accepted.  *See* Declaration of Layn

5   R. Phillips ("Phillips Decl." or "Mediator Decl."), attached as Exhibit 5 to the DeLange

6   Decl.   Judge Phillips explains that "[c]ounsel for both parties presented significant

7   arguments regarding their clients' positions, and it was apparent to me that both sides

8   possessed strong, non-frivolous arguments, and that neither side was assured of victory."

9   *Id.* ¶7.   Judge Phillips further explains and concludes:

10   Based on my experience as a litigator, a former U.S. District Judge and a

11   mediator, I believe that this settlement represents a recovery and outcome

12   that is reasonable and fair for the Settlement Class and all parties involved.

13   I further believe it was in the best interests of all of the parties, and the

14   Settlement Class, that they avoid the burdens and risks associated with

15   taking a case of this size and complexity to trial, and that they agree on the

16   settlement now before the Court.  In sum, I strongly support the approval of

17   the Settlement in all respects.

18   *Id.* ¶13.

19   The terms of the Settlement are set forth in the Stipulation (ECF No. 81-1).  In the

20   Court's Preliminary Approval Order, the Court preliminarily approved the Settlement,

21   certified the Settlement Class for purposes of the Settlement, and directed that notice be

22   distributed to potential members of the Settlement Class.  Shortly thereafter, on or about

23   September 28, 2015, Defendants caused the $15 million Settlement Amount to be

24   deposited into an escrow account for the benefit of the Settlement Class.

25   While Lead Plaintiff and Lead Counsel believe that the Settlement Class has

26   strong claims, they recognize that they would have faced significant risks in establishing

27   all the elements of their claims.   The issues of falsity, scienter, loss causation, and

28   damages were highly contested throughout the litigation.   Although Lead Plaintiff

overcame Defendants' arguments in defeating Defendants' motion to dismiss, Defendants would have several additional opportunities to convince the Court, or a jury, that, for example, Defendants' statements were not, in fact, false; that Defendants had promptly notified investors and the Transportation Security Administration ("TSA") about problematic issues the Company was facing; and that none of the alleged corrective disclosures revealed that Defendants' previous statements were false or fraudulent.   Indeed, the Court determined at the pleading stage that, although when viewed holistically, the Complaint's allegations "sufficiently bolster the inference of scienter to survive the Motion to Dismiss," "none of the statements or evidence in the Amended Complaint independently establishes scienter." *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015).   Absent settlement, Defendants would have had the opportunity at summary judgment and trial to further contest falsity, scienter, loss causation, and damages.

The $15 million cash Settlement eliminates these risks and provides a certain and immediate cash recovery for the Settlement Class.   In light of the obstacles to recovery, and the substantial time and expense that continued litigation would require, Lead Plaintiff and Lead Counsel believe that the Settlement is a very good result for the Settlement Class, and provides a fair and reasonable resolution of the claims.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation for the Settlement proceeds.   The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants.   The Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant and is based on his event study estimating the amount of artificial inflation in the prices of OSI common stock during the Settlement Class Period. *See* Declaration of Bjorn I. Steinholt, CFA in Support of the Proposed Plan of Allocation ("Steinholt Decl."), attached as Exhibit 3 to DeLange Decl.   It is substantively the same as plans that have been approved and successfully used to allocate recoveries in other

securities class actions.  The Plan of Allocation is fair, reasonable and adequate, and should be approved.

As required by the Court's Preliminary Approval Order, the Court-approved Notice was mailed to potential Settlement Class Members and their nominees beginning on September 17, 2015.  *See* Declaration of Adam D. Walter re Notice Dissemination and Publication ("Walter Decl."), attached as Exhibit 2 to DeLange Decl. Over 35,000 Notices have been sent to potential Settlement Class Members and their nominees.  *Id.* ¶¶2-8.  In addition, the Court-approved Summary Notice was published in the *Investor's Business Daily* and over the *PR Newswire* on September 24, 2015.  *Id.* ¶9. Information regarding the Settlement has been made available through a toll-free telephone number established for the Settlement and posted on the website established by the Claims Administrator specifically for this Settlement, as well as on Lead Counsel's website.  *See id.* ¶¶10-12; *see also* DeLange Decl. ¶43.

To date there are no objections to any aspect of the Settlement, and only one request for exclusion from a potential Settlement Class Member.[3]

## II.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Standards For Judicial Approval Of Class Action Settlements

It is well established that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law

---

[3] The individual requesting exclusion states that he bought, and sold for a profit, a total of 600 shares during the Settlement Class Period.  After the November 16, 2015 deadline for objections and exclusion requests, Lead Plaintiff will submit for the Court's consideration the parties' agreed-upon form of proposed Judgment Approving Class Action Settlement, including as an exhibit a list of those persons (and entities, if any) who request exclusion from the Settlement Class.

suits.").  Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that it is fair, reasonable and adequate.  *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012).

A court's role in settlement approval is essentially twofold:  determining whether the settlement (i) is tainted by fraud or collusion, and (ii) is fair, reasonable and adequate.  *See Officers for Justice*, 688 F.2d at 625.  The decision whether to approve a settlement is committed to the Court's sound discretion.  In exercising that discretion, courts in the Ninth Circuit are instructed to consider the following factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel;  . . .  and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 625); *see also Lane*, 696 F.3d at 819 (referring to these as the "*Hanlon* factors").  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.  Weighing these factors is not an adjudication of the merits of the case:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be

1    judged against a hypothetical or speculative measure of what *might* have

2    been achieved by the negotiators.

3    *Id.* (emphasis added).

4    Here, the Settlement is the product of hard-fought litigation and extensive arm's-

5    length negotiations by experienced securities class action litigators directed by a

6    sophisticated Lead Plaintiff.  There is not even a hint of collusion.  In Lead Plaintiff's

7    and Lead Counsel's considered judgment, the Settlement represents a fair, reasonable,

8    and adequate resolution of the litigation and warrants this Court's approval.

9        **B.    The Settlement Meets The**
              **Ninth Circuit Standard For Approval**
10

11          **1.    The Settlement Is The Result Of Arm's-Length**
                     **Negotiations And A Mediator's Recommendation**
12

13   The parties' negotiations were thorough and the Settlement reached without

14   collusion after good-faith bargaining among the parties and Defendants' insurance

15   carriers, including the acceptance of an informed double-blind Mediator's

16   Recommendation.  As detailed in the Mediator Declaration, Lead Counsel, defense

17   counsel, and Defendants' representatives and insurance carriers participated in a full-day

18   mediation with Judge Phillips on June 12, 2015.  Before the mediation, the parties

19   submitted to Judge Phillips detailed mediation statements and exhibits that addressed

20   both liability and damage issues.  The session ended without any agreement being

21   reached.

22   Over the course of the next 1½ months, Judge Phillips conducted further

23   negotiations with the parties and the carriers, which culminated in an agreement in

24   principle to settle the Action following Judge Phillips' Mediator's Recommendation.

25   The Mediator's Recommendation was based on Judge Phillips' review and

26   understanding of the mediation statements and filings in the Action, the mediation

27   session, his separate caucus sessions with each party, post-mediation separate calls, and

28

the overall negotiation process, and set forth the general recommended monetary and non-monetary terms of the recommended settlement.

As courts within this Circuit and nationwide have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case"); *see also In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in "arm's length negotiations," including mediation before Judge Phillips, "an experienced and well-regarded mediator of complex securities cases"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable") (citation omitted).

The fact that the parties did not reach agreement at the initial mediation session, and required additional negotiations, further demonstrates that the Settlement was the product of arm's-length negotiations. *See, e.g., Hicks v. Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.") (citation omitted). The arm's-length nature of the negotiations supports final approval of the Settlement.

### 2. Review Of The *Hanlon* Factors Supports Final Approval Of The Settlement

#### a) Lead Plaintiff's Case Is Strong, But Entails Risks

Courts evaluating proposed class action settlements consider the strength of the plaintiffs' case and the risks of further litigation. *See, e.g., Torrisi v. Tucson Elec.*

*Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  While Lead Plaintiff and Lead Counsel believe that they could ultimately prevail against Defendants, they recognize that numerous risks and uncertainties would accompany further litigation of the Settlement Class's claims.

The fraud alleged in this case centered around Rapiscan's body and baggage scanners.  The Complaint alleges that Defendants made several false and misleading statements about OSI's body scanners and the Company's inability to develop the ATR software that the government required OSI to incorporate in the machines to address the privacy concerns caused by the "naked body images" (Complaint, ¶57) that the machines produced.  Specifically, Lead Plaintiff alleges that even though OSI "never even got close" (*id.* ¶58) to solving the problems plaguing their fruitless attempt to develop the ATR software, Defendants falsely and misleadingly told investors that (i) the ATR software had completed testing, was "undergoing its final testing as we speak" (*id.* ¶65), or was currently in testing, which could lead to more sales, and (ii) everything was "business as usual" (*id.* ¶61) with respect to the body scanners, and that the company "expect[ed] that [TSA] will be looking at potential orders within the next few months" (*id.* ¶65).  The Complaint further alleges that when Defendants made these statements, they hid from investors that (i) the Company had rigged the testing of machines with the new ATR software in order to conceal the Company's inability to develop the software, (ii) the Company was hopelessly behind schedule in completing the software's development, and (iii) the Company likely would never be able to successfully develop the software.

The Complaint also alleges that Defendants made misleadingly positive statements about its Department of Homeland Security ("DHS") contacts for OSI's "bread-and-butter" baggage scanners (*id.* ¶¶77-79) without revealing that the Company had improperly switched one of the scanner's major components to an unapproved, Chinese-made part without obtaining the required preapproval from DHS.

In order to prevail on its claims, Lead Plaintiff would bear the burden of proving falsity, materiality, reliance, scienter, loss causation, and damages. Each of these issues would be vigorously contested. Indeed, Defendants argued in their motion to dismiss that the statements about the baggage and body screeners either were nonactionable puffery or statements of corporate optimism, or were not false when made. Even though the Court found in denying the motion to dismiss that Lead Plaintiff had adequately alleged the falsity of Defendants' statements, Defendants undoubtedly would have continued to press those arguments at summary judgment or trial. Defendants repeatedly have pointed to language in the Court's Order denying the motion to dismiss where, Defendants contend, the Court agreed that some of the allegedly false statements were statements that "merely reflect corporate optimism." *OSI*, 2015 WL 1985562, at *9. If the case had proceeded to trial, Defendants also likely would have attempted to develop evidence that Rapiscan did, in fact, send a version of the software and three scanners to TSA for testing to argue that their statements that the software was "undergoing its final testing" and that Defendants had "completed our side" of development were technically true.

The complex contractual arrangement between OSI and TSA/DHS created another risk unique to the facts of this case. Defendants have asserted that OSI's contracts with TSA/DHS prohibited them from publicly releasing any of the information that Lead Plaintiff alleges should have been disclosed to investors. Thus, Defendants argue, Lead Plaintiff's omission claims fail as a matter of law because Defendants cannot be held liable for failing to disclose facts that they were legally prohibited from disclosing. Were the Court to accept that argument, Lead Plaintiff's claims would be severely limited.

Defendants also argued, and undoubtedly would have continued to argue and try to prove to the Court or the jury, that they were not personally involved in the development of the ATR software or the switch to the unapproved part, and did not know about the circumstances that gave rise to TSA's show-cause letters or DHS's

debarment proceeding.  They also likely would have tried to show that when they learned of the problems, they moved quickly to investigate, address, and resolve the government's concerns.

Defendants also have argued that Lead Plaintiff will not be able to prove loss causation because none of the corrective disclosures alleged in the Complaint revealed that Defendants' previous statements were false or fraudulent.  Rather, Defendants have argued, the alleged corrective disclosures revealed only the existence of a government investigation or inquiry into possible wrongdoing or misconduct, which, Defendants claim, cannot form the basis of a viable loss causation theory under recent Ninth Circuit precedent because it simply puts investors on notice of a potential future disclosure of fraudulent conduct.  *See, e.g., Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014).

Defendants have further argued that even if any of the alleged corrective disclosures were found to have revealed the falsity of Defendants' statements, Lead Plaintiff would not be able to disaggregate the losses caused by those disclosures from losses caused by other non-actionable factors.

The inability to obtain, or at least the significant difficulty and uncertainty in being able to obtain, TSA documents posed another significant challenge to Lead Counsel's ability to develop the evidence needed to prevail at trial, and increased the risk that it would be not able to do so.  Lead Counsel conducted research and understood that it would be difficult to overcome many of TSA's assertions that certain requested documents were TSA Documents and contained Sensitive Security Information ("SSI").  At a minimum, going through the *Touhy*-request process and challenging the SSI designations in the Ninth Circuit would cause substantial delays, with no certainty of success.  The Settlement avoids these problems and risks.

Had any of these arguments been accepted in whole or part, they could have eliminated or, at a minimum, dramatically limited any potential recovery for the Settlement Class.  Further, Lead Plaintiff would have had to prevail at several stages – motions for class certification and summary judgment, trial – and if it prevailed on those,

on the appeals that were likely to follow.  The Settlement avoids these litigation risks and guarantees the Settlement Class a favorable and immediate cash recovery of $15 million.

**b)**     **The Expense, Complexity, And**
**<u>Likely Duration Of Further Litigation</u>**

Courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement.  *See, e.g., Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair).  Thus, a court "shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expense litigation."  *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

It is well known that class action litigation is inherently complex.  *See, e.g., Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation").  Courts recognize that securities class actions, in particular, are typically complex and expensive to prosecute.  *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005).  This difficult and complex securities class action is no exception.  This Action, if taken to trial, would have expended substantial party and judicial resources.  *See Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *11 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources.  There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").  The Action would have required extensive discovery, requiring much additional time by the parties (and likely the Court to resolve disputes), and at great additional expense.  Indeed, Judge Phillips explained that "[b]ecause the cost and challenge that both sides faced in seeking discovery would

be significantly increased if the case continued in litigation, I believed that this juncture created a settlement window for the parties to resolve the matter." Phillips Decl. ¶10. Substantial time and expense would also be expended in further motion practice, including at the class certification and summary judgment stages, and preparing the case for trial. The trial itself would be time-consuming, expensive, and uncertain – and no matter the outcome, appeals would be likely. Even if Lead Plaintiff prevailed through motion practice, and ultimately won at trial and on appeal, the appeals process could span several years, during which the Settlement Class would receive nothing.

In contrast, the Settlement results in an immediate and substantial tangible recovery for the Settlement Class, without the risk, expense, and delay of further litigation. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (internal citations omitted). This factor likewise favors approval.

### c)    The Risk Of Maintaining Class Action Status Throughout The Trial

A pending class certification motion may justify approval of a final settlement where, as here, the motion "may be outcome-determinative in itself[.]" *Omnivision*, 559 F. Supp. 2d at 1041. When the Settlement was reached, Lead Plaintiff's class certification motion was pending before the Court. The Settlement avoids the uncertainty with respect to certification and, thus, supports approval of the Settlement. *See id.* at 1041-42 ("If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely . . . . As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed.").[4]

_____

[4] This factor would support Settlement even if, as Lead Plaintiff expected, the Court granted Lead Plaintiff's motion for class certification, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification  may be altered or

### d)   The Amount Obtained In Settlement

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Nor is the proposed settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at 625.  As "[s]ettlement is the offspring of compromise[] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."  *Officers for Justice*, 688 F.2d at 624.  In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Here, the Settlement provides for the recovery of $15 million in cash.  The Settlement was the direct consequence of Judge Phillips' informed Mediator's Recommendation, and was reached only after Lead Counsel had conducted an extensive investigation, consulted with experts, overcame Defendants' motion to dismiss, pursued discovery, and engaged in substantial negotiations.  The recovery provides an immediate and tangible benefit to the Settlement Class, and is well within a range of reasonableness in light of the best possible recovery and the substantial risks presented by the litigation.

Lead Counsel engaged a consultant to assist in estimating potentially recoverable damages.  Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity.  The estimate of potential maximum recoverable damages in this case, assuming that Lead Plaintiff prevailed on all

---

amended before final judgment.");  *see also Omnivision*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

claims and overcame all defenses, was at most roughly $170 million.  But that number would be reduced or eliminated entirely if the Court or jury accepted some or all of Defendants' defenses, including their claims that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable.  If, for example, Defendants proved that their alleged misstatements about the baggage scanners were not false, damages could be reduced to $76 million.  And if Defendants were able to persuade the Court or a jury that the November 2012 and May 2013 announcements did not constitute corrective disclosures, damages could be eliminated entirely.[5]

### e)   The Extent Of Discovery Completed And The Stage Of The Proceedings

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case are additional factors that courts consider in determining the fairness, reasonableness, and adequacy of a settlement.  *See Mego Fin.*, 213 F.3d at 459; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009).  The parties need not have engaged in extensive formal discovery as long as they have engaged in sufficient investigation of

---

[5] *See* DeLange Decl. ¶38.  Even before accounting for Defendants' causation arguments and other defenses, the recovery of approximately 9% of the maximum recoverable damages is significantly higher than the 2.2% median settlement recovery as a percentage of estimated damages in securities class actions in 2014, as reported by Cornerstone Research.  If Defendants were successful in defeating the December 2013 disclosures, as discussed herein, the Settlement is approximately 20% of the recoverable damages.  *See* Cornerstone Research, "Securities Class Action Settlements: 2014 Review and Analysis," at p. 8, Figure 7, *available at* www.cornerstone.com/Get Attachment/701f936e-ab1d-425b-8304-8a3e063abae8/Securities-Class-Action-Settlements-2014-Review-and-Analysis.pdf; *see also* NERA, "Recent Trends in Securities Class Action Litigation:  2014 Full-Year Review," at p. 32, Figure 27 (reporting a 0.7% median settlement value as a percentage of investor losses in 2014), *available at* www.nera.com/content/dam/nera/publications/2015/PUB_2014 _Trends_0115.pdf.

the facts to enable the parties and the Court to intelligently make an appraisal of the Settlement.[6]

Here, before entering into the Settlement, Lead Counsel thoroughly evaluated the strengths and weaknesses of Lead Plaintiff's claims.  As set forth in greater detail in the DeLange Declaration, Lead Counsel extensively developed the record by, among other things:

- Performing an in-depth review and analysis of:  (i) OSI's public SEC filings; (ii) research and other reports by securities and financial analysts covering OSI and its business; (iii) OSI press releases and other public statements made by or about Defendants; (iv) news articles and other media reports about OSI or its baggage and body screeners; (v) transcripts of OSI's earnings calls and investor and industry conferences; and (vi) pricing, trading, and other data concerning OSI common stock, *see* DeLange Decl. ¶19;

_____

[6] *See, e.g., Mego Fin.*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alas. P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *see also In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (finding the factor to weigh in favor of approval where "[a]lthough the parties have not engaged in extensive discovery . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) (finding this factor to weigh in favor of approval where "Class Counsel undertook a comprehensive pre-suit investigation lasting over a year" and "Class Counsel and Defendants engaged in certification discovery involving the exchange of documents and several depositions").

- Conducting a thorough investigation identifying and interviewing potential percipient witnesses, including numerous former OSI employees, such as a Senior Test Engineer at Rapiscan, a Director of International Programs at Rapiscan, a Field Service Engineer for Rapiscan, a Director of Global Sales Operations at Rapiscan, and a Vice President of Customer Service for Rapiscan.  Several of the witnesses are cited in the Complaint and referenced in the Court's Order sustaining the Complaint as supporting the inference of scienter, *see id.*;

- Consulting with economic and accounting experts on such issues as GAAP accounting, financial reporting, causation, and damages, *see id.*;

- Drafting the detailed 103-page Complaint, sufficient to overcome the PSLRA's heightened pleading standard, *see id.*;

- Preparing extensive briefing in response to Defendants' motion to dismiss, *see id.* ¶20;

- Serving Lead Plaintiff's discovery requests on Defendants, including seeking 35 categories of documents, and conferring with Defendants on ways to resolve, or at least narrow, their disagreements over Defendants' objections to the requests, including disputes over appropriate custodians, search terms, and relevant time frames, *see id.* ¶¶23, 25;

- Serving Freedom of Information Act requests on TSA and DHS, and reviewing, analyzing, and researching TSA and DHS assertions that many of the documents sought were TSA agency records that must be sought through a "*Touhy* request" sent to DHS's office of General Counsel, and that many of the documents constituted or contained SSI that TSA would not allow Defendants to produce under any circumstances, *see id.* ¶24;

- Reviewing and analyzing documents produced by Defendants, including organization charts for various OSI divisions and subsidiaries, minutes of meetings of OSI's board of directors and audit committee, corporate-

governance guidelines, management representation letters, internal financial presentations, documents concerning executive compensation, press releases and back-up materials for press releases, anti-corruption compliance manuals and policies, various iterations of OSI's codes of ethics and conduct, and copies of applicable insurance policies, *see id.* ¶26;

- Reviewing and responding to Defendants' discovery requests, including searching for and collecting responsive documents, *see id.* ¶23;

- Drafting Lead Plaintiff's motion for class certification, supported by an expert report, *see id.* ¶¶28-30.

Through these efforts, Lead Plaintiff gained sufficient information to evaluate the Mediator's Recommendation to settle the action for $15 million in cash before additional time and resources were expended on further litigation. Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). For this reason, courts have commended class counsel for recognizing when, as in this case, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. Appx. 452, 457 (9th Cir. 2009).

Indeed, courts regularly approve settlements reached relatively early in the formal litigation process. *See, e.g., Mego Fin.*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney*, 151 F.3d 1239; *TD Ameritrade*, 2011 WL 4079226, at *6 (approving settlement after the filing of a motion to dismiss and prior to significant discovery). In sum, the parties reached a settlement when they were well informed as to the facts, legal issues, and risks of the Action.

f)      **The Experience And Views Of**
**Lead Plaintiff And Lead Counsel**

Courts recognize that the opinion of experienced counsel supporting the settlement is "entitled to considerable weight." *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9 (citations omitted). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 WL 1594403, at *9 (internal citation omitted).

Here, Lead Counsel has many years of experience in litigating securities class actions throughout the country – including within this Circuit and District in particular – and in assessing the respective merits of each side's case.[7] Additionally, throughout the

_____

[7] For example, Bernstein Litowitz has obtained recoveries on behalf of investors in securities class action litigation in this Circuit, alone – both before and after trial – in amounts totaling over $1 billion. *See, e.g., In re Maxim Integrated Prods., Inc. Sec. Litig.*, 08-00832-JW (N.D. Cal.) ($173 million settlement); *In re Connetics Sec. Litig.*, 07-02940 SI (N.D. Cal.) ($12.75 million); *In re New Century*, 07-cv-00931 (FMOx) (C.D. Cal.) ($125 million); *In re Int'l Rectifier Corp. Sec. Litig.*, 07-02544-JFW (C.D. Cal.) ($90 million); *In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*, 02-CV-2775-MRP (C.D. Cal.) ($92.5 million); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 09-CV-1376-LHK (N.D. Cal.) ($125 million); *In re McKesson HBOC, Inc. Sec. Litig.*, 99-CV-20743 RMW (N.D. Cal.) (over $1.04 billion); *In re Wash. Mut., Inc. Sec. Litig.*, 07-cv-1809 (W.D. Wash.) ($208.5 million); *In re Toyota Motor Corp. Sec. Litig.*, CV 10-922 DSF (C.D. Cal.) ($25.5 million); *In re SunPower Sec. Litig.*, CV 09-5473-RS (N.D. Cal.) ($19.7 million); *In re Dendreon Corp. Class Action Litig.*, C11-01291JLR (W.D. Wash.) ($40 million); *In re Clarent Corp. Sec. Litig.*, Master File No. C-01-3361-CRB (N.D. Cal.) (obtaining plaintiff verdict at trial against CEO for knowing violation of federal securities laws). *See also* Firm Resume of Lead Counsel, attached to DeLange Decl. as Exhibit 4-D.

litigation and settlement negotiations, Defendants have been represented by very skilled and highly respected counsel at Latham & Watkins, including the former global Chair of its Litigation Department, who brought considerable experience and expertise to bear and spared no effort in the defense of their clients.  Judge Phillips explains:

> [T]he advocacy on both sides of the case was outstanding.  I have experience with the principal attorneys working on this case for Lead Plaintiff (from the law firm of Bernstein Litowitz Berger & Grossmann LLP) and for Defendants (from the law firm of Latham & Watkins LLP) from other cases I have mediated.  I was familiar with the effort, creativity, and zeal they put into their work.  I expected that they would represent their respective clients in the same manner here, as they did.  All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients.  The settlement is the direct result of all counsel's experience, reputation and ability in these types of cases.

Phillips Decl. ¶14.

In the face of this knowledgeable and formidable defense, Lead Counsel were nonetheless able to develop a case that was sufficiently strong to overcome the heightened pleading standard of the PSLRA, and persuade Defendants, and their insurance carriers, to settle on terms that are favorable to the Settlement Class.

In addition, Lead Plaintiff's support for the Settlement here is further evidence that the Settlement is fair, reasonable and adequate.  Under the regime put in place with the enactment of the PSLRA, the Lead Plaintiff's support for a settlement should be accorded "special weight because [the Lead Plaintiff] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).  Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to take control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will

participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. 104-369, at *32 (1995).  Lead Plaintiff is a sophisticated institutional investor, and its strong support of the Settlement further supports its approval.

**g)**     **The Reaction Of The Settlement
Class To The Proposed Settlement**

The reaction of the Settlement Class to the Settlement is another factor in determining the adequacy of the Settlement.  *See Rambus*, 2009 WL 166689, at *3 (citation omitted).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).  To date, no Settlement Class Member has objected to the Settlement, the Plan of Allocation or Lead Counsel's fee and expense request.  As set forth in the Preliminary Approval Order, the deadline to object is November 16, 2015.

**III.    THE PLAN OF ALLOCATION IS
FAIR, REASONABLE, AND ADEQUATE**

Assessment of the adequacy of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole – the plan needs to be "fair, reasonable and adequate."  *See Omnivision*, 559 F. Supp. 2d at 1045; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992).  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted).

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be

reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock" as "even handed").

Here, the proposed Plan of Allocation distributes the settlement proceeds on a *pro rata* basis, calculating a Claimant's relative loss proximately caused by Defendants' alleged false and misleading statements and material omissions, based on factors such as when and at what prices the Claimant purchased and sold OSI common stock.   As explained in the DeLange Declaration and the Steinholt Declaration (Exhibit 3 to the DeLange Declaration), Lead Plaintiff engaged Caliber Advisers, Inc. to assist in developing a plan to allocate the Settlement proceeds among Claimants.

In developing the Plan of Allocation, Lead Plaintiff's expert calculated the amount of estimated artificial inflation in the per share closing price of OSI common stock that allegedly was proximately caused by Defendants' alleged false and misleading statements and material omissions.   In calculating the estimated alleged artificial inflation caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiff's expert considered the fraud-related price declines in OSI's common stock price following the four alleged corrective disclosures that, according to Lead Plaintiff's allegations, revealed (at least partially) the alleged truth to investors.   In doing so, Lead Plaintiff's expert performed an event study, a widely accepted methodology used to isolate the company-specific portion of a price decline after controlling for market and industry factors, and to determine whether a decline is statistically significant.

The Plan of Allocation was detailed in the Notice.   In response to over 35,000 Notices sent, there have been no objections and only one exclusion request from a potential Settlement Class Member, further supporting its approval.

## IV.   **THE SETTLEMENT CLASS RECEIVED ADEQUATE NOTICE**

Lead Plaintiff has provided the Settlement Class with adequate notice of the Settlement. Beginning on September 17, 2015, Lead Plaintiff, through the Claims Administrator, disseminated over 35,407 copies of the Court-approved Notice to potential Settlement Class Members and their nominees who could be identified with

reasonable effort, from multiple sources.  *See* Walter Decl. ¶¶2-8.  In addition, the Court-approved Summary Notice was published in the *Investor's Business Daily* and over the *PR Newswire* on September 24, 2015.  *See id.* ¶9.  Information regarding the Settlement was also made available through a toll-free telephone number established for the Settlement, *see id.* ¶10, and posted on the website established by the Claims Administrator specifically for this Settlement, and on Lead Counsel's website.  *See id.* ¶12; *see also* DeLange Decl. ¶43.  This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1).

The Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement.  It informs the Settlement Class of, among other things:  (1) the amount of the Settlement; (2) the reasons why the parties propose the Settlement; (3) the estimated average recovery per damaged share of OSI common stock; (4) the maximum amount of attorneys' fees and expenses that will be sought; (5) the name, telephone number, and address of representatives of Lead Counsel who will be reasonably available to answer questions from Settlement Class Members concerning matters contained in the Notice; (6) the right of Settlement Class Members to object to the Settlement or seek exclusion from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events.  15 U.S.C. § 78u-4(a)(7). The Notice further explains that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim Forms under the Plan of Allocation proposed by Lead Plaintiff and included in the Notice.  Thus, the Notice is sufficient because it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (citations omitted); *see also In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008).

In sum, the Notice fairly apprises Settlement Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice regimen); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007).

In addition, Lead Counsel is informed that Defendants timely served the Class Action Fairness Act ("CAFA") notice on August 31, 2015. *See* DeLange Decl. ¶47.

## V.   CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED

The parties have stipulated to certification of the Settlement Class for settlement purposes. *See* Stip. ¶2. The Court's September 2, 2015 Preliminary Approval Order granted Lead Plaintiff's motion for preliminary approval of the Settlement and preliminarily certified the Settlement Class for settlement purposes only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF No. 82. Nothing has changed to alter the propriety of certification for settlement purposes and, for all the reasons stated in Lead Plaintiff's previously filed memorandum of law in support of its motion for class certification and supporting expert report (ECF Nos. 74, 75, 75-1), and in Lead Plaintiff's application for preliminary approval (ECF No. 80), Lead Plaintiff requests that the Court grant final certification of the Settlement Class pursuant to Rules 23(a) and (b)(3).

# VI.  **CONCLUSION**

Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and the proposed Plan of Allocation.

Dated:  November 2, 2015

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP


_____*/s/ Timothy A. DeLange*_____
TIMOTHY A. DeLANGE

Blair A. Nicholas (Bar No. 178428)
blairn@blbglaw.com
Timothy A. DeLange (Bar No. 190768)
timothyd@blbglaw.com
Niki L. Mendoza (Bar No. 214646)
nikim@blbglaw.com
Richard D. Gluck (Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Counsel for Lead Plaintiff Arkansas State Highway Employees Retirement System and Lead Counsel for the Settlement Class*