1   BERNSTEIN LITOWITZ BERGER
       & GROSSMANN LLP
2   BLAIR A. NICHOLAS (Bar No. 178428)
    blairn@blbglaw.com
3   TIMOTHY A. DELANGE (Bar No. 190768)
    timothyd@blbglaw.com
4   NIKI L. MENDOZA (Bar No. 214646)
    nikim@blbglaw.com
5   RICHARD D. GLUCK (Bar No. 151675)
    rich.gluck@blbglaw.com
6   12481 High Bluff Drive, Suite 300
    San Diego, California 92130
7   Telephone: (858) 793-0070
    Facsimile: (858) 793-0323
8

9   *Counsel for Lead Plaintiff Arkansas State Highway*
    *Employees Retirement System and Lead Counsel*
10  *for the Settlement Class*

11

12                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
13                           WESTERN DIVISION

14  MARK ROBERTI, Individually and     | Case No.: 2:13-cv-09174-MWF
    on Behalf of All Others Similarly
15  Situated,                          | CLASS ACTION
16                                      |
                      Plaintiff,        | LEAD COUNSEL'S NOTICE OF
17                                      | MOTION AND MOTION FOR
                                        | AWARD OF ATTORNEYS' FEES
18         v.                           | AND REIMBURSEMENT OF
                                        | LITIGATION EXPENSES;
19                                      | MEMORANDUM OF POINTS AND
    OSI SYSTEMS, INC., DEEPAK          | AUTHORITIES IN SUPPORT
20  CHOPRA, ALAN I. EDRICK, and        | THEREOF
    AJAY MEHRA,
21                                      |
                                        | Judge:      Hon. Michael W. Fitzgerald
22                    Defendants.       | Courtroom: 1600
                                        | Date:       December 7, 2015
23                                      | Time:       10:00 a.m.

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT,** pursuant to the Court's Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 82), on December 7, 2015, at 10:00 a.m., before the Honorable Michael W. Fitzgerald, United States District Court, Central District of California, Courtroom No. 1600, 312 North Spring Street, Los Angeles, California 90012-4701, Bernstein Litowitz Berger & Grossmann LLP, Lead Counsel and counsel to Lead Plaintiff, the Arkansas State Highway Employees Retirement System ("Lead Plaintiff" or "ASHERS") will and hereby does move the Court for an order granting an award of attorneys' fees and reimbursement of litigation expenses in the above-captioned securities class action.[1]

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in Support Thereof; the Declaration of Timothy A. DeLange in Support of Final Approval of Class Action Settlement and Plan of Allocation, and Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("DeLange Decl."); the exhibits thereto; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

Lead Counsel is unaware of any opposition to this Motion.  Pursuant to the Court's Preliminary Approval Order, any objection to Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses must be filed on or before November 16, 2015.  To date, no objections have been filed.

---

[1] All capitalized terms that are not defined herein are defined in the Stipulation and Agreement of Settlement dated as of August 20, 2015 (the "Stipulation," ECF No. 81-1).

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I.     INTRODUCTION ................................................................................. 1

II.    THE REQUESTED FEES ARE FAIR AND REASONABLE ............................ 3

    A.    Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common Fund Obtained ................................................. 3

    B.    Factors Considered By Courts In The Ninth Circuit Support Approval Of The Requested Fee As Fair And Reasonable ................................. 4

        1.    The Results Achieved, In The Face Of Significant Risks, Support The Requested Fee ....................................... 5

        2.    The Skill Required And Quality Of Lead Counsel's Work Performed Support The Requested Fee ....................... 7

        3.    The Contingent Nature Of The Fee And The Financial Burden Carried By Lead Counsel Support The Requested Fee ........................................................ 11

        4.    The Requested Fee Is Consistent With Or Less Than Awards Made In Similar Cases ..................................... 12

        5.    The Reaction Of The Settlement Class Supports The Requested Fee ............................................................ 14

        6.    A Lodestar Crosscheck Confirms That The Requested Fee Is Reasonable ......................................................... 14

III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE ................................. 17

IV.   CONCLUSION ................................................................................. 18

# **TABLE OF AUTHORITIES**

<u>Case</u>                                                                                          <u>Page</u>

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989).....................................................................4, 14

*Aichele v. City of Los Angeles*,
    2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) ..........................................................15

*In re Apple iPhone/iPod Warranty Litig.*,
    40 F. Supp. 3d 1176 (N.D. Cal. 2014) ......................................................................4

*Barbosa v. Cargill Meat Solutions Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) .............................................................................12

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)...................................................................................................3

*Buccellato v. AT&T Operations, Inc.*,
    2011 WL 3348055 (N.D. Cal. June 30, 2011).....................................................14, 17

*In re CV Therapeutics, Inc. Sec. Litig.*,
    2007 WL 1033478 (N.D. Cal. Apr. 4, 2007)...........................................................14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) .........................................................13

*In re ECOtality, Inc. Sec. Litig.*,
    2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) .........................................................17

*Glass v. UBS Fin. Servs., Inc.*,
    331 Fed. App'x 452 (9th Cir. 2009) (unpubl.) ...........................................4, 5, 14, 15

*Glass v. UBS Fin. Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. App'x 452
    (9th Cir. 2009) (unpubl.)..........................................................................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................................14

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ........................................................5, 9

*In re Informix Corp. Sec. Litig.*,
  1999 U.S. Dist. LEXIS 23579 (N.D. Cal. Nov. 23, 1999) ........................................14

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...............................................14, 15, 16, 19

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 WL 2650592 (N.D. Cal. July 6, 2011) ...........................................................4, 13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................passim

*Roberti v. OSI Sys., Inc.*,
  2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ........................................................1, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................................................3

*Vincent v. Reser*,
  2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .........................................................4, 19

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................................................passim

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ...........................................................................4, 5, 13

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) .......................................................................17

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 78u-4(a)(6) ....................................................................................................3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), having recovered $15 million for the benefit of the Settlement Class, respectfully applies for an award of attorneys' fees in the amount of 20% of the Settlement Amount (or $3 million).   Lead Counsel also seeks $130,205.34 in reimbursement of Litigation Expenses it reasonably and necessarily incurred to prosecute the Action.

Throughout the litigation, the stakes have been large, the risks substantial, and the battles hard-fought.   The likelihood of succeeding was highly uncertain.   Lead Counsel nevertheless undertook this representation on a contingency basis, with no guarantee of success or recovery.   Lead Counsel faced substantial risks establishing falsity, scienter, and loss causation; defeating defenses; proving damages; and establishing that a class action was appropriate for litigation purposes.   Although Lead Counsel was able to conduct a thorough investigation sufficient to draft a detailed Complaint that overcame the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Defendants assuredly would have challenged the allegations again at both summary judgment and trial.   Indeed, although the Court found that the Complaint's allegations, when viewed holistically at the pleading stage, "sufficiently bolster the inference of scienter to survive the Motion to Dismiss," the Court also noted that "none of the statements or evidence in the Amended Complaint independently establishes scienter."  *Roberti v. OSI Sys., Inc.,* 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015).

As detailed in the accompanying DeLange Declaration, Lead Counsel vigorously pursued this litigation.   Among other things, Lead Counsel conducted a comprehensive investigation to prepare the Complaint, including review and analysis of OSI's public SEC filings; research and other reports by securities and financial analysts covering OSI and its business; OSI press releases and other public statements made by or about

Defendants; news articles and other media reports about OSI or its baggage and body screeners; transcripts of OSI's earnings calls and investor and industry conferences; and pricing, trading, and other data concerning OSI common stock, *see* DeLange Decl. ¶19.

Lead Counsel also identified and interviewed numerous percipient witnesses. Lead Counsel opposed Defendants' motion to dismiss; engaged and consulted with experts in several areas requiring specialized knowledge; researched the law applicable to the claims and potential defenses; pursued discovery; filed a motion for and engaged in a thorough mediation with experienced defense counsel and successfully negotiated a favorable settlement. *See id.* Sections II and III.A.

Given the substantial recovery obtained for the Settlement Class, the complexity and amount of work involved, the skill and expertise required, and the significant risks that Lead Counsel undertook, the requested award of 20% of the Settlement Amount is fair and reasonable. It is below the Ninth Circuit's 25% "benchmark," and consistent with, or less than, fee awards in other similar cases. A lodestar cross-check confirms that the requested fee, which represents a multiplier of less than 2.2, is fair and reasonable. Moreover, Lead Plaintiff has reviewed and endorsed the fairness and reasonableness of the requested fee. *See* Declaration of Arkansas State Highway Employees Retirement System in Support of Final Approval of Class Action Settlement and Plan of Allocation and an Award of Attorneys' Fees and Reimbursement of Expenses ("ASHERS Decl." or "Lead Plaintiff Decl."), attached as Exhibit 1 to the DeLange Decl.

As required by the Court's September 2, 2015 Preliminary Approval Order, the Court-approved Notice was mailed to potential Settlement Class Members and their nominees beginning on September 17, 2015. *See* Declaration of Adam D. Walter re Notice Dissemination and Publication ("Walter Decl."), attached as Exhibit 2 to the DeLange Decl. Over 35,000 Notices have been sent to potential Settlement Class Members and their nominees. *See id.* ¶¶2-8. In addition, the Court-approved Summary Notice was published in the *Investor's Business Daily* and over the *PR Newswire* on

September 24, 2015.  *See id.* ¶9.  Information regarding the Settlement has been made available through a toll-free telephone number established for the Settlement and posted on the website established by the Claims Administrator specifically for this Settlement, as well as on Lead Counsel's website.  *See id.* ¶¶10, 12; *see also* DeLange Decl. ¶43. The Notice advised Settlement Class Members that Lead Counsel would seek attorneys' fees in an amount not to exceed 20% of the Settlement Amount, and reimbursement of Litigation Expenses in an amount not to exceed $300,000.  *See* Exhibit A to the Walter Decl., ¶¶5, 71.

Pursuant to the Preliminary Approval Order, the deadline for Settlement Class Members to file any objection to Lead Counsel's fee and expense request is November 16, 2015.  To date there are no objections.[2]

For the reasons set forth below, Lead Counsel respectfully requests that the Court approve its motion for attorneys' fees and expenses.

## II.     THE REQUESTED FEES ARE FAIR AND REASONABLE

### A.     Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common Fund Obtained

The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant Action, are "a most effective weapon" and "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 318 (2007).  The PSLRA also authorizes courts to award attorneys' fees and expenses to counsel for the

---

[2] If any objections are received, Lead Counsel will address them in the reply papers to be filed on November 30, 2015.

plaintiff class provided the award does not exceed a reasonable percentage of the amount of damages paid to the class.  15 U.S.C. § 78u-4(a)(6).

The Ninth Circuit has expressly approved the percentage-of-recovery approach, which has become the prevailing method for awarding fees in common fund cases in the Ninth Circuit.  *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. App'x 452, 456-57 (9th Cir. 2009) (unpubl.) (overruling objection based on use of percentage-of-the-fund approach); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (recognizing that the "use of the percentage method in common fund cases appears to be [the] dominant" method for determining attorneys' fees).

The percentage-of-recovery method also decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis.  *See In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1181 (N.D. Cal. 2014); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).  Rather than engaging in a full-blown lodestar analysis, courts employing the percentage method sometimes use a less rigorous "lodestar cross-check" on the reasonableness of the requested fee.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming use of percentage method and application of lodestar method as a cross-check); *Vincent v. Reser*, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) (using percentage method with lodestar cross-check); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592 (N.D. Cal. July 6, 2011) (same).  Regardless of which method is utilized, the fees awarded must be fair and reasonable under the circumstances of a particular case. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*")*,* 19 F.3d 1291, 1295 (9th Cir. 1994).

**B.   Factors Considered By Courts In The Ninth Circuit Support Approval Of The Requested Fee As Fair And Reasonable**

Courts in this Circuit consider the following factors when determining whether a fee is fair and reasonable:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden

carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class; and (7) the amount of a lodestar cross-check. *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1046-48. Application of each of these factors confirms that the requested fee of 20% is fair and reasonable.

**1.     The Results Achieved, In The Face Of
Significant Risks, Support The Requested Fee**

Courts have consistently recognized that the settlement achieved is an important factor to consider in determining an appropriate fee award. *See, e.g., Omnivision*, 559 F. Supp. 2d at 1046; *see also Glass*, 331 Fed. App'x at 456-57. Here, Lead Counsel succeeded in obtaining a $15 million cash Settlement for the Settlement Class. This achievement was the result of Lead Counsel's vigorous prosecution and settlement negotiations in the face of formidable risks. Consequently, the $15 million recovered on behalf of the Settlement Class represents a substantial achievement that weighs in favor of granting the 20% fee.

Risk that continued litigation might result in the Settlement Class (and Lead Counsel) not receiving any recovery at all is another important factor in determining a fair fee award. *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-301.

If this Action had proceeded, numerous material uncertainties existed concerning liability and damages. The fraud alleged in this case centered around Rapiscan's body and baggage scanners. The Complaint alleges that Defendants made several false and misleading statements about OSI's body scanners and the Company's inability to develop the ATR software that the government required OSI to incorporate in the machines to address the privacy concerns caused by the "naked body images" (Complaint, ¶57) that the machines produced. Specifically, Lead Plaintiff alleges that even though OSI "never even got close" (*id.* ¶56) to solving the problems plaguing its

fruitless attempt to develop the ATR software, Defendants falsely and misleadingly told investors that (i) the ATR software had completed testing, was "undergoing its final testing as we speak" (*id.* ¶65), or was currently in testing, which could lead to more sales, and (ii) everything was "business as usual" (*id.* ¶61) with respect to the body scanners, and that the Company "expect[ed] that [TSA] will be looking at potential orders within the next few months." (*id.* ¶65). The Complaint further alleges that when Defendants made these statements, they hid from investors that (i) the Company had rigged the testing of machines with the new ATR software in order to conceal the Company's inability to develop the software, (ii) the Company was hopelessly behind schedule in completing the software's development, and (iii) the Company likely would never be able to successfully develop the software.

The Complaint also alleges that Defendants made misleadingly positive statements about their Department of Homeland Security ("DHS") contacts for OSI's "bread-and-butter" baggage scanners (*id.* ¶¶77-79) without revealing that the Company had improperly switched one of the scanner's major components to an unapproved, Chinese-made part without obtaining the required preapproval from DHS.

In order for Lead Plaintiff to prevail on these claims, Lead Counsel would have to prove falsity, materiality, reliance, scienter, loss causation, and damages. As detailed in the DeLange Declaration, each of these issues had been, and would continue to be, vigorously contested. In the face of very serious risks, Lead Counsel was able to obtain a certain and immediate recovery of $15 million for the benefit of the Settlement Class. The Settlement, which represents between 9% and 20% of maximum recoverable damages, even assuming Lead Counsel was successful in proving Lead Plaintiff's claims through trial and appeal, far exceeds the median recovery as a percentage of estimated damages.[3]

---

[3] Lead Counsel engaged a consultant to assist in estimating potentially recoverable damages. Estimating aggregate damages can be challenging due to, among other things,

## 2. The Skill Required And Quality Of Lead Counsel's Work Performed Support The Requested Fee

Another factor to consider in determining what fee to award is the skill required and quality of work performed. *See Heritage Bond*, 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award."). "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.' [citation omitted]. This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

Here, respectfully, the quality of Lead Counsel's work performed – in the face of the PSLRA's heightened pleading standard – was extremely high. As set forth in

---

assumptions that must be made regarding trading activity. The estimate of potential maximum recoverable damages in this case, assuming that Lead Plaintiff prevailed on all claims and overcame all defenses, was at most roughly $170 million. But that number would be reduced or eliminated entirely if the Court or jury accepted some or all of Defendants' defenses, including their claims that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. If, for example, Defendants proved that their alleged misstatements about the baggage scanners were not false, damages could be reduced to $76 million. And if Defendants were able to persuade the Court or a jury that the November 2012 and May 2013 announcements did not constitute corrective disclosures, damages could be eliminated entirely. *See* DeLange Decl. ¶38. Even before accounting for Defendants' causation arguments and other defenses, the recovery of approximately 9% of the maximum recoverable damages is significantly higher than the 2.2% median settlement recovery as a percentage of estimated damages in securities class actions in 2014, as reported by Cornerstone Research. If Defendants were successful in defeating the December 2013 disclosures, as discussed herein, the Settlement is approximately 20% of the recoverable damages. *See* Cornerstone Research, "Securities Class Action Settlements: 2014 Review and Analysis," at p. 8, Figure 7, *available at* www.cornerstone.com/GetAttachment/701f936e-ab1d-425b-8304-8a3e063abae8/Securities-Class-Action-Settlements-2014-Review-and-Analysis.pdf; *see also* NERA, "Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review," at p. 32, Figure 27 (reporting a 0.7% median settlement value as a percentage of investor losses in 2014), *available at* www.nera.com/content/dam/nera/publications/2015/PUB_2014_Trends_0115.pdf.

---

greater detail in the DeLange Declaration, Lead Counsel extensively developed the record by, among other things:

- Performing an in-depth review and analysis of: (i) OSI's public SEC filings; (ii) research and other reports by securities and financial analysts covering OSI and its business; (iii) OSI press releases and other public statements made by or about Defendants; (iv) news articles and other media reports about OSI or its baggage and body screeners; (v) transcripts of OSI's earnings calls and investor and industry conferences; and (vi) pricing, trading, and other data concerning OSI common stock, *see* DeLange Decl. ¶19;

- Conducting a thorough investigation identifying and interviewing potential percipient witnesses, including numerous former OSI employees, such as a Senior Test Engineer at Rapiscan, a Director of International Programs at Rapiscan, a Field Service Engineer for Rapiscan, a Director of Global Sales Operations at Rapiscan, and a Vice President of Customer Service for Rapiscan.  Several of the witnesses are cited in the Complaint and referenced in the Court's Order sustaining the Complaint as supporting the inference of scienter, *see id.*;

- Consulting with economic and accounting experts on such issues as GAAP accounting, financial reporting, causation, and damages, *see id.*;

- Drafting the detailed 103-page Complaint, sufficient to overcome the PSLRA's heightened pleading standard, *see id.*;

- Preparing extensive briefing in response to Defendants' motion to dismiss, *see id.* ¶20;

- Serving Lead Plaintiff's discovery requests on Defendants, including seeking 35 categories of documents, and conferring with Defendants on ways to resolve, or at least narrow, their disagreements over Defendants'

objections to the requests, including disputes over appropriate custodians, search terms, and relevant time frames, *see id.* ¶¶23, 25;

- Serving Freedom of Information Act requests on TSA and DHS, and reviewing, analyzing, and researching TSA and DHS assertions that many of the documents sought were TSA agency records that must be sought through a "*Touhy* request" sent to DHS's office of General Counsel, and that many of the documents constituted or contained SSI that TSA would not allow Defendants to produce under any circumstances, *see id.* ¶24;

- Reviewing and analyzing documents produced by Defendants, including organization charts for various OSI divisions and subsidiaries, minutes of meetings of OSI's board of directors and audit committee, corporate-governance guidelines, management representation letters, internal financial presentations, documents concerning executive compensation, press releases and back-up materials for press releases, anti-corruption compliance manuals and policies, various iterations of OSI's codes of ethics and conduct, and copies of applicable insurance policies, *see id.* ¶25;

- Reviewing and responding to Defendants' discovery requests, including searching for and collecting responsive documents, *see id.* ¶22;

- Drafting Lead Plaintiff's motion for class certification, supported by an expert report, *see id.* ¶27; and

- Drafting Lead Plaintiff's mediation statements, preparing for and participating in the mediation and subsequent negotiations, *see id.* ¶¶28-30.

The attorneys at Bernstein Litowitz are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record of prosecuting securities cases throughout the country – including within

this District.[4]   Lead Counsel's reputation as experienced and competent counsel in complex class action cases, both willing and able to litigate the case to resolution, facilitated Lead Counsel's ability to negotiate the Settlement, ultimately resulting in the $15 million recovery for the Settlement Class.

The quality and vigor of opposing counsel are also important in evaluating the services rendered by Lead Counsel.  *See, e.g.*, *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).   Throughout the litigation and settlement negotiations, Defendants have been represented by very skilled and highly-respected counsel at Latham & Watkins, including the former global Chair of its Litigation Department, who brought considerable experience and expertise to bear and spared no effort in the defense of their clients.

Judge Phillips explains:

[T]he advocacy on both sides of the case was outstanding.   I have experience with the principal attorneys working on this case for Lead Plaintiff (from the law firm of Bernstein Litowitz Berger & Grossmann

---

[4] For example, Bernstein Litowitz has obtained recoveries on behalf of investors in securities class action litigation in this Circuit, alone – both before and after trial – in amounts totaling over $1 billion. *See, e.g., In re Maxim Integrated Prods., Inc. Sec. Litig.*, 08-00832-JW (N.D. Cal.) ($173 million settlement); *In re Connetics Sec. Litig.*, 07-02940 SI (N.D. Cal.) ($12.75 million); *In re New Century*, 07-cv-00931 (FMOx) (C.D. Cal.) ($125 million); *In re Int'l Rectifier Corp. Sec. Litig.*, 07-02544-JFW (C.D. Cal.) ($90 million); *In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*, 02-CV-2775-MRP (C.D. Cal.) ($92.5 million); *In re Wells Fargo Mortg.-Backed Certificates Litig.,* 09-CV-1376-LHK (N.D. Cal.) ($125 million); *In re McKesson HBOC, Inc. Sec. Litig.*, 99-CV-20743 RMW (N.D. Cal.) (over $1.04 billion); *In re Wash. Mut., Inc. Sec. Litig.,* 07-cv-1809 (W.D. Wash.) ($208.5 million); *In re Toyota Motor Corp. Sec. Litig.*, CV 10-922 DSF (C.D. Cal.) ($25.5 million); *In re Sunpower Sec. Litig.*, CV 09-5473-RS (N.D. Cal.) ($19.7 million); *In re Dendreon Corp. Class Action Litig.*, C11-01291JLR (W.D. Wash.) ($40 million); *In re Clarent Corp. Sec. Litig.,* Master File No. C-01-3361-CRB (N.D. Cal.) (obtaining plaintiff verdict at trial against CEO for knowing violation of federal securities laws).   *See also* Firm Resume of Lead Counsel, attached to the DeLange Decl. as Exhibit 4-D.

LLP) and for Defendants (from the law firm of Latham & Watkins LLP) from other cases I have mediated. I was familiar with the effort, creativity, and zeal they put into their work. I expected that they would represent their respective clients in the same manner here, as they did. All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients. The settlement is the direct result of all counsel's experience, reputation and ability in these types of cases.

Phillips Decl. ¶14.

In the face of this knowledgeable and formidable defense, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to overcome the heightened pleading standard of the PSLRA, and persuade Defendants, and their insurance carriers, to settle on terms that are favorable to the Settlement Class.

### 3. The Contingent Nature Of The Fee And The Financial Burden Carried By Lead Counsel Support The Requested Fee

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.[5]  It is an established practice in the private legal market to reward attorneys for taking on the serious risk of non-payment by permitting a fee award that reflects over their normal hourly rates for prevailing in contingency cases. *See Nuvelo*, 2011 WL 2650592, at *2 (citing *WPPSS*, 19 F.3d at 1299). "This practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*

Here, Lead Counsel received no compensation during the two years since the initial complaint was filed. During that time, Lead Counsel invested nearly 2,500 hours

---

[5] *WPPSS*, 19 F.3d at 1299; *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007); *see also Omnivision*, 559 F. Supp. 2d at 1047.

for a total lodestar of over $1.36 million, and incurred reasonable and necessary expenses of approximately $130,000 in prosecuting the case.  *See* Nicholas Decl., attached as Exhibit 4 to the DeLange Decl.  Additional work in connection with the Settlement and claims administration will also be required.  Lawyers working on the case have also forgone the business opportunity to devote time to other cases.  *See Vizcaino,* 290 F.3d at 1050.  Any fee award has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses.  Unlike defense counsel – who typically receive payment on a timely basis whether they win or lose – Lead Counsel sustained the entire risk that it would have to fund the expenses of this Action and that, unless Lead Counsel succeeded, it would not be entitled to any compensation whatsoever.  The contingent nature of the representation, and the burden carried by Lead Counsel, support the requested fee.

**4.    The Requested Fee Is Consistent With
Or Less Than Awards Made In Similar Cases**

Lead Counsel's requested fee of 20% is less than the Ninth Circuit's 25% "benchmark" for common fund cases, and below fee percentages regularly awarded in securities class action settlements in the Ninth Circuit and elsewhere.  *See, e.g., Glass*, 331 Fed. App'x at 457; *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998) (referring to 25% in attorneys' fees as a "benchmark award"); *see also Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *1 (N.D. Cal. June 30, 2011) (recognizing Ninth Circuit's 25% benchmark, surveying cases and granting 25% fee award).  Indeed, "in most common fund cases, the award exceeds that benchmark."  *Activision*, 723 F. Supp. at 1377-78 (surveying securities cases nationwide and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%").[6]

---

[6] *See also, e.g., Vizcaino*, 290 F.3d at 1048-50 (affirming fee award of 28% of $96.9 million settlement fund); *Omnivision*, 559 F. Supp. 2d at 1047 (approving 28% fee

Courts have repeatedly awarded fees of 25% or more – more than the 20% requested here – where a settlement was reached during the pendency of a motion to dismiss or shortly after, and where no or very limited formal discovery had been obtained as a result of the PSLRA discovery stay. *See, e.g., In re Int'l Rectifier Corp. Sec. Litig.*, CV 07-02544-JFW (C.D. Cal.), ECF No. 316 (granting fee award of 25% of settlement fund obtained in securities class action prior to substantial formal discovery); *Oh v. Chan*, CV 07-04891 DDP (C.D. Cal.), ECF No. 99 (granting fees equaling 25% of settlement fund obtained in securities class action prior to a ruling on defendants' motion to dismiss); *cf. Glass*, 331 Fed. App'x at 457 (affirming award of 25% where settlement reached early, noting "the favorable timing of the settlement"). Indeed, one of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, sufficient information about the value of the claims could be determined through investigation and careful analysis of the legal and factual issues, thus avoiding the need for costly and lengthy formal discovery. *See Aichele v. City of Los Angeles,* 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) ("Many courts and commentators have recognized that the percentage of the available

---

award in securities class action) (citing *Activision*, 723 F. Supp. at 1377-78); *Waldrep v. ValueClick, Inc.*, CV 07-5411 DDP (C.D. Cal.), ECF No. 160 (granting fees equaling 25% of settlement fund in securities class action); *In re Sunpower Sec. Litig.*, CV 09-5473-RS (N.D. Cal.), ECF No. 270 (awarding fees of 25% of $19.7 million settlement fund); *Oh v. Chan*, CV 07-04891 DDP (C.D. Cal.), ECF No. 99 (granting fees equaling 25% of settlement fund in securities class action); *In re Int'l Rectifier Corp. Sec. Litig.*, CV 07-02544 JFW (C.D. Cal.), ECF No. 316 (granting fees equaling 25% of settlement fund in securities class action); *In re THQ, Inc. Sec. Litig.*, CV 00-01783-JFW (C.D. Cal.), ECF No. 128 (granting fees equaling 30% of the settlement amount in a securities class action); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478, at *2 (N.D. Cal. Apr. 4, 2007) (approving 30% fee award in securities class action); *In re Informix Corp. Sec. Litig.*, 1999 U.S. Dist. LEXIS 23579, at *6 (N.D. Cal. Nov. 23, 1999) (awarding 30% of $132 million settlement fund in securities class action); *Silva v. Banco Popular N. Am.*, CV 08-06300-JFW (C.D. Cal.), ECF No. 42 (granting fees equaling 28% of the class settlement fund); *Knight v. Red Door Salons, Inc*., 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (approving 30% fee award).

fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner.") (citing *Vizcaino*, 290 F.3d at 1050 n.5 ("it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.")).

### 5.   The Reaction Of The Settlement Class Supports The Requested Fee

The reaction of the class to a proposed settlement and fee request is a relevant factor in approving fees. *See Red Door Salons*, 2009 WL 248367, at *7; *Omnivision*, 559 F. Supp. 2d at 1048. Here, pursuant to the Court's Preliminary Approval Order, beginning on September 17, 2015, the Court-approved Notice was disseminated to more than 35,000 potential Settlement Class Members and their nominees, and the Summary Notice was published in the *Investor's Business Daily* and over the *PR Newswire* on September 24, 2015. *See* Walter Decl., ¶¶2-9. The Notice informed Settlement Class Members that Lead Counsel would seek fees in an amount not to exceed 20% of the Settlement Amount, and reimbursement of Litigation Expenses in an amount not to exceed $300,000. *See* Exhibit A to the Walter Decl., ¶¶5, 71. The Notice further advised Settlement Class Members of, among other things, their right to object to Lead Counsel's request for attorneys' fees and Litigation Expenses. To date, there are no objections, further supporting the requested fee. *See, e.g.*, *Red Door Salons*, 2009 WL 248367, at *7 (no objection supports 30% award); *Omnivision*, 559 F. Supp. 2d at 1048 (only three objections supports 28% award).

### 6.   A Lodestar Crosscheck Confirms That The Requested Fee Is Reasonable

Although courts in this Circuit typically apply the percentage approach to determine attorneys' fees in common fund cases, courts may perform an informal

lodestar cross-check on the percentage method.  *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."), *aff'd Glass*, 331 Fed. App'x at 456-57 ("In reviewing the award of attorneys' fees, the district court properly performed an informal lodestar cross-check, and noted the relatively low time-commitment by plaintiff's counsel"; affirming district court's 25% fee award over objection).

In *Vizcaino*, the Ninth Circuit noted that as follows:

"[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . .  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." . . .  In common fund cases, "attorneys whose compensation depends on their winning the case[] must make up in compensation in the cases they win for the lack of compensation in the cases they lose."

290 F.3d at 1051 (citation omitted).  There, the Ninth Circuit affirmed a fee awarded that equaled 28% of the settlement fund and a multiplier of 3.65, which the court found to be "within the range of multipliers applied in common fund cases."  *Id.*; *see also Buccellato*, 2011 WL 3348055, at *1 (awarding 25% fee, representing a 4.3 multiplier).

As detailed herein and in the accompanying DeLange Declaration, the work Lead Counsel performed in this matter wholly supports the Court's approval of Lead Counsel's request for a fee award of 20% of the Settlement Amount, or $3 million.[7]

---

[7] As is customary in seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, included with Lead Counsel's declaration is a schedule identifying the lodestar of Bernstein Litowitz (by individual, position, billing rate, and time billed).  *See, e.g., In re ECOtality, Inc. Sec. Litig.*, 2015 WL 5117618, at *4 (N.D. Cal. Aug. 28, 2015) ("The lodestar crosscheck calculation need entail neither

Lead Counsel devoted 2,492.25 hours to this Action, amounting to a lodestar of $1,364,905.00.[8]   Thus, Lead Counsel's fee request represents a multiplier of less than 2.2 of Lead Counsel's total lodestar.  This modest multiplier falls within the range of multipliers for awards in other complex securities cases within this Circuit.

In sum, Lead Counsel's attorneys' fee request is well within the range, or below, what courts in this Circuit commonly award in complex securities class actions, whether calculated as a percentage of the settlement fund or in relation to Lead Counsel's lodestar – and warrants the Court's approval.

---

mathematical precision nor bean counting . . . .   [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.").  Unlike the full lodestar method, when conducting a lodestar crosscheck, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005).

[8] *See* DeLange Decl. ¶63; *see also* Nicholas Decl. Exhibit 4-A.  The hourly rates are the same as, or comparable to, the rates submitted by Bernstein Litowitz for lodestar cross-checks in other securities class action litigation for fee applications that have been granted, including within this Circuit.  *See, e.g., In re Dendreon Corp. Class Action Litig.*, 11-cv-01291 (JLR) (W.D. Wash. 2013) (ECF No. 103-4); *In re Sunpower Sec. Litig.*, CV 09-5473-RS (N.D. Cal. 2013) (ECF No. 261-3); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 09-cv-1376-LHK (N.D. Cal. 2011) (ECF No. 453-4); *see also Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 12-CV-884-JPS (E.D. Wisc. 2013) (ECF No. 76-3); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 08-cv-08093-LTS (S.D.N.Y. 2015) (ECF No. 273-6); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 09-cv-2137 (KBF) (S.D.N.Y. 2014) (ECF No. 328); *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, 08-cv-1713 (PKC) (E.D.N.Y. 2014) (ECF No. 222-5).  In addition, it appears based on studies, including one conducted by the National Law Journal, that Bernstein Litowitz's billing rates are comparable to, or less than that, of defense counsel in this case, Latham & Watkins LLP.  *See, e.g.,* National Law Journal, *"Billing Rates Across the Country"* (Jan. 13, 2014), *available at http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country* (reporting Latham & Watkins partner billing rates ranging from $895 to $1,110, and associate billing rates ranging from $465 to $725).

---

1    **III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE**

2          Lead Counsel also requests reimbursement of its Litigation Expenses in the

3    amount of $130,205.34 incurred in prosecuting and resolving the Action on behalf of the

4    Settlement Class.   Attorneys who create a common fund for the benefit of a class are

5    entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund

6    so long as the submitted expenses are reasonable, necessary and directly related to the

7    prosecution of the action.  *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may

8    recover their reasonable expenses that would typically be billed to paying clients in non-

9    contingency matters.").

10         From the outset, Lead Counsel was aware that it might not recover any of its

11   expenses or, at the very least, would not recover anything until the Action was

12   successfully resolved.   Lead Counsel also understood that, even if the case was

13   ultimately successful, reimbursement for expenses would not compensate it for the lost

14   use of funds advanced to prosecute the Action.   Thus, Lead Counsel was motivated to,

15   and did, take significant steps to minimize expenses wherever practicable without

16   jeopardizing the vigorous and efficient prosecution of the Action.  *See* DeLange Decl.

17   ¶77.

18         The expenses for which Lead Counsel seeks reimbursement are detailed in the

19   accompanying sworn Nicholas Declaration, attached as Exhibit 4-B to the DeLange

20   Declaration, setting forth the specific category of expenses incurred and the amount.

21   The types of expenses for which Lead Counsel seeks reimbursement are necessarily

22   incurred in litigation and routinely charged to clients billed by the hour.   These include

23   expenses associated with, among other things, service of process, online legal and

24   factual research, travel, experts and consultants, and mediation.  *See, e.g., Vincent*, 2013

25   WL 621865, at *5 (granting reimbursement of costs and expenses for "three experts and

26   the mediator, photocopying and mailing expenses, travel expenses, and other reasonable

27   litigation related expenses"); *Red Door Salons* 2009 WL 248367, at *7 (granting

28   reimbursement because "[a]ttorneys routinely bill clients for all of these expenses").

A large component of Lead Counsel's expenses, over 66%, is for the costs of experts and consultants, including the retention of experts with significant experience opining on damages, loss causation, and market efficiency in securities class actions.  In prosecuting the claims, Lead Counsel worked extensively with experts and consultants.  *See* DeLange Decl. ¶79.

The expenses also include the costs of online research in the amount of $24,205.47.  These are the charges for computerized factual and legal research services such as *LexisNexis, Westlaw*, and PACER.  It is standard practice for attorneys to use these resources to assist them in researching legal and factual issues, and, indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money.  *See id.* ¶80.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $300,000.  *See* Exhibit A to the Walter Decl., ¶¶5, 71.  The amount of expenses for which reimbursement is now sought, $130,205.34, is less than one-half of the maximum amount stated in the Notice.  To date, no Settlement Class Member has objected.

## IV.   <u>CONCLUSION</u>

Lead Counsel respectfully requests that the Court award it attorneys' fees in the amount of 20% of the Settlement Amount, and reimbursement of its Litigation Expenses in the amount of $130,205.34, plus interest earned at the same rate and for the same time period as the Settlement Fund, to be paid from the Settlement Fund.

Dated:  November 2, 2015

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP


    */s/ Timothy A. DeLange*
TIMOTHY A. DeLANGE

Blair A. Nicholas (Bar No. 178428)
blairn@blbglaw.com
Timothy A. DeLange (Bar No. 190768)

timothyd@blbglaw.com
Niki L. Mendoza (Bar No. 214646)
nikim@blbglaw.com
Richard D. Gluck (Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Counsel for Lead Plaintiff Arkansas State*
*Highway Employees Retirement System and*
*Lead Counsel for the Settlement Class*